[S. F. No. 22602.   In Bank.   Oct. 3, 1968.]

HELEN LE FEBVRE, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, STATE COMPENSATION INSURANCE FUND et al., Respondents.

William T. Hays for Petitioner.

Everett A. Corten, Richard Swanson, T. Groezinger, Loton Wells, G. K. Bogue and Arthur C. Jones., Jr., for Respondents.

BURKE, J.—In this review proceeding the issue is whether the record supports the determination of the Workmen's Compensation Appeals Board that the death of applicant's husband was not compensable by reason of the "going and coming" rule. As will appear, we have concluded that that

rule is not applicable under the circumstances of this case, and that the board's decision must be annulled.

The facts appear to be without substantial dispute. Applicant's husband, Warren Le Febvre, was employed as a volunteer fireman at Santa Rosa, California, by the Alpine Volunteer Fire Department. In January 1967 he suffered fatal injuries when his car went off the road while he was on his way from his home to one of the department's fire stations in order to attend an evening fire drill. Although Le Febvre received no compensation for his services as a member of the department, it is not disputed that he was an employee within the meaning of section 3361 of the Labor Code.[1] Neither did he receive reimbursement for his travel expenses when using his own car to attend drill or other meetings or to reach the scene of fires.

Le Febvre's duties as a volunteer fireman were to answer fire calls and attend drills and meetings. The drills were held in the evening twice each month to improve the firefighting ability of the volunteers; attendance once a month was compulsory. Additionally, Le Febvre was president of the Alpine Volunteer Fire Department, which also held monthly evening business meetings concerning ''The affairs of the fire department, bills, et cetera, . . .'' including the raising of funds to operate the department, as the district was not authorized to levy taxes.

The Alpine Fire Protection District or zone is divided into three areas and operates out of three stations during winter months; each area was ''supposed to have'' its own drill at its own station. Le Febvre was assigned to operate out of station No. 1. In case of a fire Le Febvre would go to his station first or would go directly to the fire, depending upon the discretion of the fire chief and the dispatcher. Le Febvre's duties included the fighting of fires at any location within the entire district.

The only occasions on which Le Febvre customarily came into station No. 1 would be for drills and for the monthly business meetings. Prior to the date of his death on January

[1]Section 3361: ''Each male member registered as an active fire fighting member of any regularly organized volunteer fire department, having official recognition, and full or partial support of the government of the county, city, town or district in which such volunteer fire department is located, is an employee of such county, city, town or district for the purposes of this division, and is entitled to receive compensation from such county, city, town or district in accordance with the provisions thereof.''

24, 1967, he had attended drills at only station No. 1. However, the secretary of the department testified that at the business meeting held two weeks earlier, at which Le Febvre presided, ''It was decided that this series of drills would take place at'' station No. 2; included was the January 24 drill. The secretary further stated that at 7:31 p.m. on January 24 she received a telephone call from Le Febvre inquiring whether the drill ''was still to be held at the Station No. 2 . . .'' and she told him it was. The chief of the department, who was Le Febvre's superior, testified that the January 24 drill at station No. 2 was ''a drill that everybody is supposed to attend, instead of just each area, the three areas.''

Le Febvre met his death while driving on a direct route from his home to the January 24 drill at station No. 2, over a narrow twisting two-lane road on an evening of heavy rain. His home was located approximately midway between station No. 1 and station No. 2.

■ Applicant contends that Le Febvre's trip to attend the January 24 drill at station No. 2 does not fall within the going and coming rule, because he had no regular or normal place of employment as contemplated by that rule. (See *Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944 [59 Cal.Rptr. 622, 428 P.2d 606]; *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832]; *Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426, 428-429 [18 Cal.Rptr. 540]; *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789 [294 P.2d 733].) We agree.

As a volunteer fireman whose duties were to respond to calls to fight fires at any location within the entire district and to attend evening drills and meetings twice each month at such locations as might be designated from time to time, Le Febvre's employment cannot be viewed as having a regular headquarters or office where he was regularly required to report in order to perform his duties or before setting out on his assigned tasks. Instead, from the moment he left his home, or any other point from which he might have been summoned, to engage in firefighting or in training drills in the district, he was acting within the scope of his employment by the volunteer fire department. Accordingly, the fact that he met his death while traveling on the public highway en route to an evening drill does not bring the going and coming rule into play. The travel was plainly required by the employment, the

travel risk was incident to the employment, and Le Febvre's death is compensable. (See *Western Pac. R.R. Co.* v. *Industrial Acc. Com.* (1924) 193 Cal. 413, 419 [224 P. 754]; *California Cas. Indem. Exchange* v. *Industrial Acc. Com.* (1936) 5 Cal.2d 185, 186 [53 P.2d 758]; see also *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570, 572 [1] [297 P.2d 649], and cases there cited.)

The award is annulled.

Traynor, C. J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would affirm the decision of the Workmen's Compensation Appeals Board.