[Civ. No. 31871. First Dist., Div. Two. Jan. 11, 1973.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD and JAMES M. McGREW, Respondents.

**COUNSEL**

T. Groezinger, James J. Vonk, George S. Bjornsen and W. R. Lowndes for Petitioner.

Morgan, Beauzay & Hammer and Victor H. Beauzay for Respondents.

**OPINION**

**KANE, J.**—Petitioner carrier seeks review of a decision of the Workmen's Compensation Appeals Board upholding an award of compensation to James M. McGrew, a 33-year-old San Jose police officer who sustained injury in an accident while driving to work in his own automobile. Petitioner contends that the injury did not arise out of and in the course of his employment and that the award should be annulled.

The board, in denying the carrier's petition for reconsideration, con-

cluded that because the applicant was traveling conspicuously on a public street, in uniform, carrying his pistol, and ready to render assistance to members of the public in the field of law enforcement, if needed, he was engaged " 'in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage of the employer,' " and that the injury was compensable under the exception to the going and coming rule established in *Garzoli* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502 [86 Cal.Rptr. 1, 467 P.2d 833].

We summarily denied the carrier's petition for a writ of review. The Supreme Court granted a hearing, transferred the cause, and then retransferred the cause to us, with directions to issue a writ of review in light of *Garzoli.*

This case involves another application of California's much maligned "going and coming" rule. Despite widespread criticism of the "arbitrary, judge-made . . . rule" (*Guest* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 670, 673 [87 Cal.Rptr. 193, 470 P.2d 1]), its continuing viability was recently reaffirmed in *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150 [104 Cal.Rptr. 456, 501 P.2d 1176].

 Ordinarily, under the going and coming rule, an injury which occurs while an employee is driving to or from work is not compensable. The rule, however, is subject to many exceptions. (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* at p. 156; *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866 [101 Cal.Rptr. 105, 495 P.2d 433]; *Guest* v. *Workmen's Comp. App. Bd., supra,* at p. 672; *Garzoli* v. *Workmen's Comp. App. Bd., supra,* at p. 505.)

In *Garzoli,* compensation was awarded to a policeman, killed on his way home from his normal duty station at the normal time, who was *required* to wear his official uniform as he conspicuously rode to and from work on his private motorcycle.

The carrier contends that the applicant's case is distinguishable from *Garzoli* in that (1) applicant, riding in his automobile, was not as *conspicuous* as Garzoli was on his motorcycle, and (2) Garzoli was *required* to wear his uniform on his way to and from work, since there were no lockers at the police station where he could leave his uniform, whereas applicant wore his uniform to work as a matter of choice.

Applicant's injury was sustained about 9:30 p.m. while on a direct route from his home to the station to begin his shift at the normal time of 10 p.m. The carrier argues that, unlike Garzoli, McGrew could not have been identified as a policeman because the indicia of his occupation were "hidden

in a dark, closed car, at night." However, a close reading of *Garzoli* reveals that the accident occurred during darkness also—i.e., in the early morning hours after his shift ended at midnight. Thus, insofar as the element of conspicuousness is concerned, the only distinction between *Garzoli* and the instant case is that Garzoli was riding his own personal motorcycle whereas McGrew was driving his own personal automobile.

With the substantial and increasing number of motorcycle operators using our city streets, many of whom wear helmets and clothing similar to, or at least not readily distinguishable from, those worn by police officers, it would be a matter of pure conjecture as to which—the automobile driver or the motorcycle operator—was the more conspicuous.

Further, in *Guest* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 670, 674, the court, under circumstances we shall hereafter relate, found the going and coming rule inapplicable to a policeman injured on his way to work despite the fact that he was riding in an automobile rather than on a motorcycle. We therefore reject the petitioner's first argument.[1]

Having disposed of the carrier's first argument, we turn to the second and more serious argument, whether the going and coming rule is applicable when the employer provides the officer with a locker for his uniform and facilities for changing his clothes at the station, but the officer nevertheless chooses to change into his uniform at home and to wear it on his way to and from the police station.

In *Garzoli,* testimony from the police chief established that there was no adequate place for a police officer to change from street clothes into his uniform, or vice versa, at the police station, and that it was with his consent that an officer might wear his uniform and carry his pistol in going and coming between his home and the police station.

In *Guest,* the officer had a locker at the police station and usually dressed on the job, but at the time of injury had been assigned to perform duties at the Los Angeles County Fair and instructed to go directly to the fairgrounds each day. Guest testified that he had not seen any place at the fairgrounds available for a police officer to change into uniform and no evidence was introduced showing that there were any such facilities. He had been told by his superiors that he was considered on duty while in uniform, and the court found that since he had been instructed to report directly to the fairgrounds, he was justified in putting on his uniform at home.

---

[1]The carrier also argues that the applicant was not in "full" uniform because he was not wearing his hat (it may have been on the seat beside him). We agree with the board that the lack of a hat is not controlling.

The latest Supreme Court case dealing with the going and coming rule is *Hinojosa* v. *Workmen's Comp. Appeals Bd.*, *supra*, 8 Cal.3d 150.[2] In *Hinojosa*, at pages 156-157, the court traced the tortuous history of the "rule," and noted the conflicting interests to be: (1) the desire of the employer to be immune from liability for the employee's injury or death that occurs in the everyday transit from home to office or plant, and (2) the desire of the employee to be protected from loss by injury or death that occurs in the nonroutine transit, or results from the means of transit or the use of a car undertaken for the employer for his benefit at his *direct or implied request.*

After a careful analysis of the decisions in an attempt to develop a formula to reconcile the divergent positions, the court noted that "In substance the courts have held non-compensable the injury that occurs during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances." The court found an extraordinary situation differing from the normal routine commute to exist when the worker's job was so structured that he was *impliedly required* to bring a car to the job in order to get from one place of work to another during the work day and his employer did not provide transportation.

It is clear from the facts of this case that the injury sustained by the officer occurred during a local commute enroute to a fixed place of business (the station) at fixed hours, a situation in which the employer would ordinarily be immune from liability in the absence of special or extraordinary circumstances.

Our inquiry then must be directed to whether the employee has demonstrated that he should be protected from loss by injury by reason of the fact that while in transit he was expected to render assistance to the public in the field of law enforcement. The officer testified that while en route from home to the police station he was expected to render assistance to the public in the field of law enforcement, if needed, that prior to the injury he had detained and questioned suspicious persons while on his way home from work, and that subsequent to the injury he had made an arrest while off duty. There was no evidence that the wearing of a uniform was a prerequisite to his enforcing the law while off duty.

■ The fact that a law enforcement officer is on 24-hour call is not sufficient to render the going and coming rule inapplicable. *(Garzoli* v. *Workmen's Comp. App. Bd.*, *supra*, 2 Cal.3d at p. 505.)

---

[2] Although the opinion in *Hinojosa* was issued on October 18, 1972, we did not have the benefit of the reasoning in that case at the time we originally considered this petition. Our denial was issued on October 20, 1972.

In *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365], compensation was awarded to a social worker killed in an automobile accident on his way to work at the normal time because he was *required* to bring his personal car to work for the benefit of the employer. The principles enunciated in *Smith* were the basis for the *Garzoli* holding that the going and coming exclusion was not applicable under the circumstances shown in *Garzoli* (*Garzoli* v. *Workmen's Comp. App. Bd., supra* at p. 505). The court noted these circumstances to be: "In the present case, the city did not require that the decedent furnish a vehicle of transportation on the job. From the testimony of the police chief, however, it is clear that, as a practical matter, the decedent was *required* to wear his official uniform to and from work and that, at least when so clothed, carrying his pistol, and traveling conspicuously in the public streets on a motorcycle on his way home immediately after completing his shift, he was expected to render assistance to members of the public in the field of law enforcement, if needed." (*Garzoli* v. *Workmen's Comp. App. Bd., supra* at p. 506; italics added.)

The principles enunciated in *Smith* were also controlling in *Hinojosa*. There the court held that the implied requirement that the worker supply his own transportation "became as concrete a part of the contract of employment as the express requirement in *Smith*." (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra*, at p. 162.)

■ There was no evidence in the instant case that the employer had requested or required the officer to wear his uniform on the way to work. On the contrary, it appears from the evidence that he was wearing his uniform on the way to work as a matter of choice rather than as a matter of necessity. The evidence showed that the employer provided lockers in which the officers could keep their uniforms and facilities for the officers to change from their street clothes into their uniforms, and vice versa, at the police station. In street clothes, the officer would have been indistinguishable from any other worker on his way to work. Having made provision for the officer to change into uniform at the police station, and not having requested or required the officer to wear his uniform on the way to work, the employer should not be charged with liability resulting from an injury that does not arise from the officer's performance of law enforcement activities while the officer is in everyday transit from his home to the police station. Any other conclusion would permit the officer to impose liability upon the employer at his own whim or caprice.

We hold, therefore, that under the circumstances here shown, the officer was not engaged "in conduct reasonably directed toward the fulfillment of his employer's requirements, performed for the benefit and advantage

of the employer," within the meaning of the *Smith, Garzoli,* and *Guest* cases, and the going and coming exclusion is applicable.

The decision of the board is annulled, and the cause is remanded to the board for further proceedings consistent with the views herein expressed.

Taylor, P. J., and Rouse, J., concurred.

The petition of respondent McGrew for a hearing by the Supreme Court was denied March 29, 1973. McComb, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.