[Civ. No. 60951. Second Dist., Div. One. July 14, 1981.]

N. L. BAROID, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
THOMAS G. HANCOCK, Respondents.

COUNSEL

Jones, Nelson, Sisk & Ford and David P. Ford for Petitioner.

Cantrell & Green, Cantrell, Green & Pekich and Marilyn S. Green for Respondents.

OPINION

LILLIE, J.—Respondent Thomas G. Hancock (hereinafter also applicant) sustained injury on July 5, 1979, in an automobile accident on a public street while he was on the way to work for petitioner N. L. Baroid (employer). Applicant was in his own automobile at the time of injury. It is undisputed that he was en route to his place of employment at the time of injury. This accident has resulted in severe injury to applicant, including paraplegia; further, the injury has affected his memory concerning the details of the events leading up to his injury.

The WCAB has found that applicant's injury is compensable under the Workers' Compensation Act. Petitioner contends that under the "going and coming" rule applicant's injury is not compensable. Applicant and the WCAB, however, assert that the injury is compensable under one or more exceptions to the going and coming rule.

# I

██ "The going and coming rule precludes [recovery under the Workers' Compensation Act] for injury suffered during the course of a local commute to a fixed place of business at fixed hours in the absence of exceptional circumstances. (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].) [¶] For purpose[s] of the rule, the employment relationship does not begin until an employee enters the employer's premises. Prior to entry the going and coming rule ordinarily precludes recovery; after entry, injury is generally presumed compensable as arising in the course of employment. (*Pacific Indem. Co. v. Industrial Acc. Com.* (1946) 28 Cal.2d 329, 336 [170 P.2d 18]; *Cal. Cas. Ind. Exch. v. Ind. Acc. Com.* (1943) 21 Cal.2d 751, 755 [135 P.2d 158]; 1 Larson, Workmen's Compensation Law (1972) §§ 15.00-15.11, pp. 4-2—4-4.)" (*General Ins. Co. v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 598 [128 Cal. Rptr. 417, 546 P.2d 1361].) The going and coming rule, however, is riddled with exceptions. (*Hinojosa v. Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 156 [104 Cal.Rptr. 456, 501 P.2d 1176]; *Bramall v. Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151, 156 [144 Cal.Rptr. 105].)

██ One such exception to the going and coming rule is the "special mission" exception. Under this exception, "An injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer. (2 Hanna, [Cal. Law of Employee Injuries and Workmen's Compensation (2d ed.)], § 9.03[3] [iv], pp. 9-41—9-43.) The employee's conduct is 'special' if it is 'extraordinary in relation to routine duties, not outside the scope of employment.' (*Schreifer v. Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832].) The special mission rule 'is ordinarily held inapplicable when the only special component is the fact the employee began work earlier or quit work later than usual.' (1 Larson, [Workmen's Compensation Law], § 16.12, p. 4-98.)" (*General Ins. Co. v. Workers' Comp. Appeals Bd., supra*, 16 Cal.3d at p. 601.)

██ Another well recognized exception to the going and coming rule is the "special risk" exception. "If, prior to entry upon the [employer's] premises, an employee suffers injury from a special risk causally related to employment, the injury is compensable under the 'special risk' exception to the going and coming rule. 'The facts that an accident happens

upon a public road and that the danger is one to which the general public is likewise exposed, however, do not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.' (*Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, 12 [118 P.2d 809]; 1 Larson, *supra*, § 9.30, pp. 3-48—3-50)." (*General Ins. Co.* v. *Workers' Comp. Appeals Bd., supra*, 16 Cal.3d at p. 600.)

## II

The employer here is engaged in the business of supplying equipment to oil well drilling operations. Applicant's routine work shift was 8 a.m. to 4:30 p.m., which is the employer's only regular work shift. However, because of the nature of the employer's business, employees were required to be available 24 hours a day; the employer operated around the clock. Applicant was therefore required to make himself available outside his regular work shift hours.

The employer provided applicant with an "airpage beeper," a device which applicant carried with him in the event he was unavailable by phone. The on-call nature of the employment was understood by applicant when he was hired by the employer. Approximately 10 times per month he would be called into work outside of his regularly scheduled work hours. Sometimes being called into work outside of his regularly scheduled shift only involved a few minutes (e.g., opening up the gates to the employer's premises); on other occasions applicant would end up working 12 hours straight. Sometimes the employer would advise applicant ahead of time (e.g., the previous work day) that he would have to come into work early; other times the employer would just phone or use the beeper to call applicant immediately into work.

Applicant traveled to work in his own automobile. The employer did not provide transportation, pay for transportation expenses or pay a mileage allowance even in the situation where applicant was called into work when the employer called him by phone or used the beeper to reach him. When applicant would be told ahead of time (e.g., the previous day) that he would have to come in outside of his regular shift, he would not be paid for his travel time. According to applicant, however, he was paid for his travel time to work when the employer phoned him or used the beeper to have him immediately come into work outside of his regularly scheduled shift.

The injury herein occurred on July 5, 1979, at approximately 4:45 a.m. while applicant was on his way to report to work at 5 a.m. at the employer's premises. It is undisputed that applicant was reporting to work early at 5 a.m. at the request of the employer. What is unclear are the circumstances surrounding the employer asking applicant to come to work early. Unfortunately, the accident herein has affected applicant's memory.

Applicant's last work day prior to the injury was July 3, 1979. Applicant does not recall being told prior to July 5th to come in at 5 a.m. on the morning of July 5th. He does remember being awakened on the morning of July 5th by a telephone call. He does not recall the name of the caller or the substance of the conversation. He then called someone, but does not recall who or what the call was about. He then remembers hurrying to get dressed and going to work.

A coworker, Jeweral Washington, remembers on July 3d being told by his supervisor, Hubert Sanchez, that Washington was to come to work at 5 a.m. on July 5th and either applicant or another employee (Ron Taylor) would come in to help him. Washington remembers Sanchez asking if he wanted applicant or Taylor to come in to help him and Washington told Sanchez that it did not matter to him. According to Washington, when he was leaving work on July 3d at about 4:30 p.m. to 5 p.m., applicant told Washington that applicant would be working with Washington on July 5th. Washington did not receive any phone call on the morning of July 5th.[1]

## III

The workers' compensation judge, whose decision has been upheld by WCAB, has found that applicant's accident is compensable under the Workers' Compensation Act as applicant's injury came within the special mission exception to the going and coming rule. In his "Report and Recommendation on Petition for Reconsideration" the judge reasoned:

"The landmark case of *Schreifer* v. *I.A.C., County of Los Angeles, State Compensation Insurance Fund* [(1964) 61 Cal.2d 289 [38 Cal. Rptr. 352, 391 P.2d 832)] clarified the definition of the term 'special

---

[1]Applicant's direct supervisor at the time of injury, Hubert Sanchez, did not testify in this matter. He no longer works for the employer and apparently lives out of state.

mission.' '"Special" means extraordinary in relation to routine duties, not outside the scope of the employment' (page [295]). 'In reporting to work hours ahead of his regularly scheduled shift, he (Schreifer) was doing more than merely making services available at the place where they (were) needed. Making the trip at that time was a special service. . . . There must have been some special need for Schreifer's services at that time.' [(Pp. 294-295.)]

"In another landmark case, *L. A. Jewish Council* v. *I.A.C.* [(1949) 94 Cal.App.2d 65 [209 P.2d 991)], Rabbi Cohn, an employee, was killed while enroute to work. The circumstances were that the decedent normally performed his duties as a librarian during the afternoon hours. His duties included the inspection and discussion of recent acquisitions. During the week of the accident, he was called upon to come to work in the evenings, to participate in certain opening ceremonies, and to then make speeches. He was asked to come early on the evening in question, earlier than he would have come for that evening's speaking duties, to inspect and discuss certain purchases. He was killed enroute. It was held that this especially early evening trip to perform services which were part of his day-time duties but extraordinary for evening work, fell within the 'special mission' exception.

"In the instant case, applicant Hancock was supposed to be at work at 5:00 a.m. on July 5th. Whether he was told on July 3rd to be there at 5:00 a.m., or summoned by phone is actually immaterial. He was reporting to work ahead of his regularly scheduled shift. There was a special need for his services at that time (as in the *Schreifer* case). Mr. Hancock's injury occurred during the early morning trip (5:00 a.m.) to perform services which were part of his daytime duties (8:00 a.m. to 4:30 p.m.), but extraordinary for the hour of 5:00 a.m., and in many ways therefore the factual situation is analogous to the *L. A. Jewish Council* case, cited above.

"Whether the applicant was paid from the time he left home is immaterial in this case in my opinion, although I do accept the applicant's testimony as persuasive on this item of evidence. For the purpose of clarification the applicant testified that Mr. Sanchez was his boss. He testified that Mr. Sanchez advised him that he was to keep time records and that his time started from the moment he was called by the beeper. Mr. [Bruce W.] Emerson [Pacific Coast operations manager for the employer,] stated that it is the policy of the employer that time starts

upon arrival at the job site. The [employer] did not produce Mr. Sanchez although they were put on notice of Mr. Sanchez's instructions at applicant's deposition taken on June 2, 1980. . . . As I previously stated however, whether the applicant was paid from the time he left home, or upon arrival at the job site, is actually not material to my decision made herein for the reasons which I have previously stated above."

Relying upon the above analysis of the workers' compensation judge, the WCAB denied reconsideration.

The employer now seeks annulment of the WCAB's decision, contending that applicant's injury does not come under the special mission exception and therefore applicant's injury is not compensable under the going and coming rule.

## IV

■ "[J]udicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence ([Lab. Code,] § 5952, subd. (d); *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627 [83 Cal.Rptr. 208, 463 P.2d 432])." (*Southern California Rapid Transit Dist., Inc. v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 162 [151 Cal.Rptr. 666, 588 P.2d 806].) We are not bound, however, by the WCAB's conclusions of law; and, where the pertinent facts are not in dispute, we deal only with a question of law. (*Dimmig v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 864-865 [101 Cal.Rptr. 105, 495 P.2d 433]; *Rhodes v. Workers' Comp. Appeals Bd.* (1978) 84 Cal. App.3d 471, 475 [148 Cal.Rptr. 713]; *Bramall v. Workers' Comp. Appeals Bd., supra*, 78 Cal.App.3d 151, 155-156.)

■ Merely because applicant was on 24-hour call is not sufficient in and of itself to render the going and coming rule inapplicable. (*Garzoli v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 502, 505 [86 Cal. Rptr. 1, 467 P.2d 833]; *State Comp. Ins. Fund v. Workmen's Comp. Appeals Bd.* (*McGrew*) (1973) 29 Cal.App.3d 902, 906 [106 Cal.Rptr. 39].) Further, the fact that applicant's hours were on frequent occasions irregular also does not necessarily justify departure from the going and coming rule. (*Schreifer v. Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832]; *Arboleda v. Workmen's Comp. App. Bd.* (1967) 253 Cal.App.2d 481, 486 [61 Cal.Rptr. 505].)

■ If applicant had been paged to work by the employer on the morning of the injury rather than arrangements being made by the employer in advance of July 5th to have applicant come into work at 5 a.m., applicant's injury would be compensable under the "wage payment or travel time" exception to the going and coming rule. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1981) § 9.03[3][c][iii].)[2] As found by the workers' compensation judge based upon applicant's testimony, applicant was paid for travel time to work when the employer phoned or paged him to come immediately into work but not when arrangements were made in advance by the employer to have applicant come into work outside of his regular shift. Quite clearly, if applicant were being paid for the time he traveled to work, his injury would be compensable under well established authority. (*Zenith Nat. Ins. Co.* v. *Workmen's Comp. App. Bd.* (1967) 66 Cal.2d 944, 947 [59 Cal.Rptr. 622, 428 P.2d 606]; *Kobe* v. *Industrial Acc. Com.* (1950) 35 Cal.2d 33, 35 [215 P.2d 736]; *Western Pipe etc. Co.* v. *Ind. Acc. Com.* (1942) 49 Cal.App.2d 108, 112-113 [121 P.2d 35].)

The workers' compensation judge and the WCAB, however, did not here resolve the crucial factual question of whether the employer had made arrangements prior to the date of injury for applicant to come into work at 5 a.m. (thus applicant would not have been paid for his travel time) or whether applicant at the time of injury was coming into work at 5 a.m. in response to the employer paging him on that very morning (thus applicant would have been paid for his travel time). Accordingly, we cannot affirm the WCAB's finding of compensability under the "wage payment or travel time" exception to the going and coming rule.

The workers' compensation judge and the WCAB rest their decision on the "special mission" exception to the going and coming rule on the basis that applicant "was reporting ahead of his regularly scheduled shift" as "there was a special need for his services at that time" in order "to perform services which were part of his daytime duties (8:00 a.m. to 4:30 p.m.), but extraordinary for the hour of 5:00 a.m."

---

[2]"An exception to the 'going and coming' rule is generally recognized where the employee's compensation covers the time involved in going to and from his work. The fact that extra wages or 'travel time' pay are paid to compensate an employee for travel to work is sufficient to bring an injury en route to work into the course of the employment." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra*, § 9.03[3][c][iii], p. 9-41.)

■ In analyzing the application of the special mission exception to the present matter, several facts must be kept in mind: (1) the nature of applicant's employment required him to be "on call" around the clock; (2) when applicant accepted the employment, he was aware of its "on call" nature; (3) applicant was frequently (about 10 times per month) called into work outside of his regularly scheduled 8 a.m. to 4:30 p.m. shift; (4) on the morning of the injury applicant was enroute to his customary location of employment rather than a different premises (e.g., another facility owned by the employer or a location not owned or operated by the employer); and (5) there is no evidence that on the day of the injury the work applicant was traveling to perform was in any way different or special from the usual work performed by the employee, that is, there was no emergency or special circumstances over that which routinely occurred at the employer's premises and in the course of the employer's business.

Further, in considering whether the special mission exception applies, for purposes of discussion, we shall assume that the employer had made arrangements on July 3d for applicant to come into work at 5 a.m. on July 5th; for if the employer had paged applicant on the very morning of the injury to come into work at that early hour, we would not need to consider the application of the special mission exception because, as already stated above, the injury would be compensable under the "wage payment or travel time" exception to the going and coming rule.

The question under the special mission exception is whether applicant's trip to work on July 5th was "extraordinary in relation to routine duties, not outside the scope of employment." (*Schreifer v. Industrial Acc. Com., supra*, 61 Cal.2d 289, 295.)

Injuries while traveling to or from work have been held within the special mission exception in various situations: salesman making an *extra* return trip to the regular work location but to perform service *outside* of his usual duties and *not within* his usual hours of employment (*State C. I. Fund v. Indus. Acc. Com. (Casey)* (1928) 89 Cal. App. 197, 200 [264 P. 514]); public relief worker performing customary duties, but at a *special time (Fenton v. Industrial Acc. Com.* (1941) 44 Cal.App.2d 379, 382 [112 P.2d 763]); librarian coming to work early at the special request of the employer to perform his customary duties but at an *unusual hour (L. A. Jewish etc. Council v. Ind. Acc. Com. (Cohn)* (1949) 94 Cal.App.2d 65, 68 [209 P.2d 991]); police officer coming into work earlier than previously scheduled in response to

telephonic orders from a superior to come into work immediately (*Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d 289, 294-295); employee traveling from home to *various* work locations as designated by the employer (*LeFebvre* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal. 2d 386, 388 [71 Cal.Rptr. 703, 445 P.2d 319]); while regular in nature, the employee traveling to perform service for the employer *outside* of his regular employment hours and routine duties and *other* than at his regular place of employment (*Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 860, 868-869); bus driver making a *special trip* to the employer's premises to deliver a medical release to return to work following an industrial injury where such release was delivered pursuant to a directive of the employer (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d 158); police officer required to wear uniform to and from work (*Garzoli* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 502; *Guest* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 670 [87 Cal.Rptr. 193, 470 P.2d 1]; but cf. *State Comp. Ins. Fund* v. *Workmen's Comp. Appeals Bd.* (*McGrew*), *supra,* 29 Cal.App.3d 902); employee bringing an automobile to work for use in the performance of employment duties pursuant to an express or implied requirement (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d 150; *Smith* v. *Workmen's Comp. Appeals Bd.* (1968) 69 Cal.2d 814 [73 Cal.Rptr. 253, 447 P.2d 365]; see also, *Rhodes* v. *Workers' Comp. Appeals Bd., supra,* 84 Cal.App.3d 471; *Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426 [8 Cal.Rptr. 540]); legal secretary taking work home with knowledge and consent of employer (*Bramall* v. *Workers' Comp. Appeals Bd., supra,* 78 Cal.App.3d 151). (See also, 1 Larson, Workmen's Compensation Law (1978) § 16.00-16.12, pp. 4-117 to 4-152; 2 Hanna, *op. cit. supra,* § 9.03[3][c][iv], pp. 9-42 to 9-44.1; Bouret, *The California Going and Coming Rule: A Plea for Legislative Clarification* (1979) 15 Cal. Western L.Rev. 116, 125-132, 134-141; Comment, *The Special Errand Exception* (1954) 6 Stan.L.Rev. 383.)

In all of the foregoing cases the common thread is that something about the location of the work, the nature of the work, or the hour the work was performed deviated from that which was the customary, fixed or usual norm.

The workers' compensation judge's decision, which the WCAB adopted, here relies specifically upon *L. A. Jewish etc. Council* v. *Ind. Acc. Com., supra,* 94 Cal.App.2d 65, and *Schreifer* v. *Industrial Acc.*

*Com., supra,* 61 Cal.2d 289, as the controlling precedent. Accordingly, these two cases merit closer attention.

We need not reiterate the pertinent facts of *L. A. Jewish etc. Council,* which the workers' compensation judge correctly detailed in this report. We only stress the point that there the employee, Rabbi Cohn, was making a trip to perform his usual duties at his customary fixed place of work as a librarian *but at an unusual hour.* As the court there stated: "In two respects the employee was called upon to deviate from the usual course of his services: he was requested to come to the library at an earlier hour than was usual or necessary in order to fulfill the conditions of his employment; and the services to be rendered to Dr. Shapiro were not the usual ones agreed to be performed and which were usually performed by Rabbi Cohn in the evenings. These circumstances justify the conclusion that his trip was an extraordinary event which was necessary in *the performance of a special service beyond the scope of the employment agreement.*" (94 Cal.App.2d at pp. 68-69.) (Italics added.)

In *Schreifer* a deputy sheriff, Schreifer, was on 24-hour call but normally worked 8 hours per day with the work shift posted one day ahead. Schreifer's posted duty hours for the day of injury were 7 p.m. to 3 a.m. At 1 p.m. of that day, however, his superior called him and instructed him to come into work "as soon as possible" but without giving any reason for the early call. While not the first time Schreifer had been called to come into work early, he had received none within the preceding month. (61 Cal.2d at p. 290.) In holding that the injury came within the special mission exception, the court stated:

"... Schreifer was on a special mission at the time of the accident, and his injuries are, therefore, compensable. This is so even though his hours of work were irregular as compared with most jobs. He nevertheless had scheduled hours of duty, set a day ahead. Here his schedule for the day in question had been posted. In reporting to work hours ahead of his regularly scheduled shift he was doing more than merely making his services available at the place where they were needed. Making the trip at that time was a special service. The telephonic order from his superior to report early was not the usual manner of scheduling duty hours. There must have been some special need for Schreifer's services at that time. The fact that a particular mission is encompassed within the terms of hire, even contemplated at the time employment began, is not determinative. Nearly every employment relationship contemplates

that extraordinary needs may arise and must be met. 'Special' means extraordinary in relation to routine duties, not outside the scope of the employment. The commission erred in denying compensation." (61 Cal.2d at pp. 294-295.)

It is clear from *Schreifer* that had the deputy been traveling to his assigned duty shift commencing at 7 p.m., the injury would not be compensable under the special mission exception. Rather in *Schreifer* it was the trip into work earlier than assigned the previous day that brought the injury within the special mission exception. Accordingly, that the deputy's regular duty hours were irregular and that he was on 24-hour call were not of themselves sufficient to bring Schreifer within the special mission exception.

We recognize the fact that, as stated in *Schreifer*, "a particular mission is encompassed within the terms of hire, even contemplated at the time employment began, is not determinative" as "Nearly every employment relationship contemplates that extraordinary needs may arise and must be met." (61 Cal.2d at p. 295.) Herein, however, the scope of applicant's employment duties contemplated *frequent* assignments at his customary place of employment which were outside of his regularly scheduled work shift. If, for the reasons already stated for purposes of the application of the special mission exception, we assume that applicant was told on July 3d to come into work at 5 a.m., then we cannot see how the injury can come within this exception anymore than had the deputy sheriff in *Schreifer* been injured while traveling to work for the 7 p.m. to 3 a.m. shift assigned the previous day. Applicant's duties to be performed on July 5th have not been shown to be unusual or extraordinary; no emergency or special circumstances concerning the work on July 5th have been shown. Rather the work on July 5th appears consistent with the customary manner in which the employer's business operated.

At the oral argument applicant's able counsel referred the court to the recent case of *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528 [163 Cal.Rptr. 750], where the First Appellate District, Division One, was faced with a special mission situation. Therein an employee was injured just before he arrived home after working just over six hours overtime. The employee normally worked 3 p.m. to 11:15 p.m., but remained at work until 5:30 a.m. the following morning to complete a semiannual grocery inventory. While it was not unusual for the employee to work overtime (he had worked

overtime on 15 occasions during the preceding 6 months), he had never worked for so long as the night of the injury. (*Id.* at p. 537, fn. 4.) After he left work at 5:30 a.m. and just before he entered his house, he was injured in an attack by an unknown assailant. (*Id.* at p. 531.)

The court in *Safeway Stores* held that the injury came within the special mission exception as there, "as in *Schreifer*, the employee's extra duty was at the employer's request and satisfied an important out-of-the-ordinary business need." (*Safeway Stores, Inc., supra*, 104 Cal.App.3d at p. 537.)

The crucial fact in *Safeway Stores*, however, was not merely that the employee had worked overtime. *Safeway Stores*, after all, must be considered in light of Justice Clark's majority opinion in *General Ins. Co. v. Workers' Comp. Appeals Bd., supra*, 16 Cal.3d 595, 601, wherein it is plainly stated that "The special mission rule 'is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or *quit work later than usual.*'" (Italics added.) Rather, significant in *Safeway Stores* were the additional facts that the particular overtime duties lasted extremely later than usual (resulting in a near doubling of the employee's normal shift duration) and were not the typically performed duties (a *semiannual* inventory). (*Safeways Stores, supra*, 104 Cal.App.3d 528, 537.)

Unlike *Safeway Stores*, herein there is no evidence that applicant was called upon to work at an hour unusual for him or to perform anything other than his customary duties.[3]

■ We are mindful that "In determining whether the facts bring a case within the going and coming rule or some exception to that rule, the mandate of Labor Code section 3202 must be kept in mind. (*Garzoli v. Workmen's Comp. App. Bd., supra*, 2 Cal.3d 502, 505; *Schreifer v. Industrial Acc. Com.*, 61 Cal.2d 289, 291 [38 Cal.Rptr. 352, 391 P.2d 832].) Section 3202 requires that the provisions of the Workmen's Compensation Act be 'liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.'" (*Dimmig v. Workmen's Comp. Appeals Bd., supra*, 6 Cal.3d 860, 866-867.) However, if there is to be a going and coming rule at all, lines must be drawn as to certain injuries

---

[3]There is also no evidence concerning how long applicant would have worked upon arrival at 5 a.m. on July 5, 1979.

being barred from compensability under that rule. (See *General Ins. Co. v. Workers' Comp. Appeals Bd., supra*, 16 Cal.3d 595; *Wilson* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 181 [127 Cal.Rptr. 313, 545 P.2d 225].) Indeed, the evasion of the going and coming rule by arbitrary exceptions based upon impertinent facts does injustice to those workers whose injuries come within the going and coming rule because they cannot point to any "unusual" fact about their journey to or from work.

Applicant also argues an alternative theory under which his injury should come within the special mission exception. Applicant argues that there was no public transportation to the employer's premises at 5 a.m. and therefore applicant utilizing his own automobile was "an implied or express condition of . . . employment." (See *Hinojosa* v. *Workmen's Comp. Appeals Bd., supra*, 8 Cal.3d 150, 161.) Applicant suggests a new application of this principle which in the past has referred to the situation where the employer either requires that the employee have an automobile or other vehicle available for the performance of assigned duties or the conditions of the employment necessitated that a vehicle be available in order that the employee perform his assigned duties during the work day. (*Hinojosa, supra*, 8 Cal.3d at pp. 160-162; *Smith* v. *Workmen's Comp. App. Bd., supra*, 69 Cal.2d 814.)

Applicant, however, has only shown that the Long Beach Public Transit District (applicant living in Long Beach at the time of injury and the employer's premises also being in Long Beach) did not provide bus service at that hour to the location of the employer's premises.[4] Applicant testified that he was unaware of any public transportation that reached the employer's premises "at night" but admitted that he had never thoroughly checked to see the extent to which transportation was available to work at night.

Even assuming as argued by applicant that there was no public bus service to the employer's premises at 5 a.m., applicant still has not demonstrated that taking his own private automobile to work was a

---

[4]The employer does not deny this assertion by applicant. We do observe, however, that a copy of the bus schedule for the Long Beach Transit District which was admitted into evidence on behalf of applicant shows its effective date as June 15, 1980, almost one year after the injury. Applicant appears to have made no showing that the bus schedule was the same on July 5, 1979. We will not belabor this point as we reject the basic contention.

"necessity." Applicant has not shown other means of transportation were unavailable (e.g., taxi, private bus service, ride from a friend, bicycle, walking). Indeed, we have serious reservations about the mere absence of public transportation as meaning the employee when using his private vehicle to travel to work is within the special mission exception. (See *Mission Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1978) 84 Cal.App.3d 50, 52 [148 Cal.Rptr. 292]; but cf. *Garzoli* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 502, 505; *Guest* v. *Workmen's Comp. App. Bd., supra,* 2 Cal.3d 670, 673-674.) To accept applicant's proposition would have widespread expansion of the special mission exception whenever the employee can show that public transportation is unavailable, impractical, or even inconvenient. Accordingly, we reject applicant's attempted expansion of the special mission exception in this regard.[5]

While not directly argued by applicant, we also do not find that the "special risk" exception to the going and coming rule (*ante*, p. 562) applies herein. Applicant has not shown that traveling to work at that hour of the morning subjected him to a greater risk of injury or that the employer's premises in any way contributed to the creation of such risk.[6]

### SUMMARY AND DISPOSITION.

The WCAB's present decision is annulled and the matter is remanded to the WCAB. The WCAB is directed to make a specific finding of fact on whether applicant was paged to work on the morning of his injury, thereby making applicant's injury compensable under the "wage payment or travel time" exception to the going and coming rule. On the other hand and for the reasons stated herein, if the employer made arrangements on July 3d for applicant to come into work at 5 a.m. on July 5th, then the injury is not compensable under the going and coming rule.

Hanson (Thaxton), J., concurred.

---

[5]We distinguish the situation where the employer, in an emergency or special situation, specially requests the employee come into work "as soon as possible" and utilization of a private vehicle is the only way with which such request can be complied.

[6]Applicant's counsel is to be complimented for her very eloquent oral argument in this matter. On reflection, however, we are of the opinion that to accept the analysis proffered by applicant's counsel would render a near fatal blow to the going and coming rule.

**SPENCER, P. J.**—I dissent. I would uphold the decision of the board.

Our review of the board's decision involves recognition of two basic considerations: *First*, that it has long been the policy, at both the administrative level and in the courts, to liberally construe the workers' compensation law to provide coverage whenever possible, thereby protecting the injured worker. (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 867; *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 155 [104 Cal.Rptr. 456, 501 P.2d 1176]; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 538 [163 Cal.Rptr. 750] and *Lefebvre* v. *Workers' Comp. Appeals Bd.* (1980) 106 Cal.App.3d 745, 750 [165 Cal.Rptr. 246].) *Second*, the appellate standard of review in matters such as this is that of substantial evidence; as was explained in *Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 162 [151 Cal.Rptr. 666, 588 P.2d 806], "judicial review of decisions of the WCAB on factual matters is limited to determining whether the decision, based on the entire record, is supported by substantial evidence. (§ 5952, subd. (d) [Labor Code]. *Le Vesque* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627)...."

The legal principles which govern the instant case are clear. The "going and coming" rule was judicially created in this state in 1916 in *Ocean Acc. etc. Co.* v. *Industrial Acc. Com.*, 173 Cal. 313, 322 [159 P. 1041]. There it was declared that in the absence of exceptional circumstances, employees are not covered by workmen's compensation while "going and coming" to and from their places of employment. That is the rule today, with certain important exceptions taking into account present realities.

While normally routine commuting—and injuries which occur during that commuting—are outside workers' compensation coverage, "[a]n injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer. [Citation.] The employee's conduct is 'special' if it is 'extraordinary in relation to routine duties, not outside the scope of employment.' [Citation.] The special mission rule 'is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual.' [Citation.]" (*General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 601 [128 Cal.Rptr. 417, 546 P.2d 1361].)

In determining whether the particular trip of the employee is "special" in the sense of being an integral part of the employment relationship, and thus included within coverage, the analysis in *Hinojosa, supra*, 8 Cal.3d 150, I find both helpful and persuasive. It was there stated that "[i]n substance the courts have held non-compensable the injury that occurs during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances.

"On the other hand, many situations do not involve local commutes enroute to fixed places of business at fixed hours. These are the extraordinary transits that vary from the norm because the employer requires a special, different transit, means of transit, or use of a car, for some particular reason of his own. *When the employer gains that kind of a particular advantage*, the job does more than call for routine transport to it; it plays a different role, bestowing a special benefit upon the employer by reason of the extraordinary circumstances. The employer's special request, his imposition of an unusual condition, removes the transit from the employee's choice of convenience and places it within the ambit of the employer's choice or convenience, restoring the employer-employee relationship." (8 Cal.3d 157; italics added.)

Thus the "going and coming" rule only excludes from coverage injuries occurring during the course of a routine, ordinary commute by the employee. The issue before us is whether it can reasonably be concluded that applicant Hancock was so engaged when he sustained severe injuries.

There was substantial evidence that the applicant was employed loading and unloading trucks and performing other similar tasks for his employer, a concern conducting business in the oil fields on a 24-hour a-day basis. Hancock ordinarily worked from 8 a.m. to 4:30 p.m., putting in a 40-hour week. He had been informed, however, at the outset of his employment that he would often be called to work at odd hours when needed. The employee was, in fact, given a "beeper" so that he might be reached by the employer at any hour and summoned to work. Hancock testified below that these summons had occurred often during his employment, and that the tasks required when he arrived varied from something taking only a few minutes to something involving many hours of work. On the date of injury, July 5, 1979, Hancock was responding to a request by the employer (whether by "beeper" or

prearrangement is uncertain) that he come to work at 5 a.m., and during the transit to his place of employment the injuries occurred.

The compensation judge identified certain factors which persuaded him that the applicant's transit fell within the special rather than ordinary category and that therefore his injuries were compensable: They were (1) that the employee was "on call" 24 hours a day, 7 days a week; (2) that the employee's normal hours were from 8 a.m. to 4:30 p.m.; (3) that reporting at 5 a.m. was not an ordinary report time. The judge relied, in making his determination, on two cases which found injuries compensable under similar circumstances. In *Schreifer v. Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832], the employee was a deputy sheriff who was, as the applicant herein, "on call" and who was, at the time of injury, in transit to his place of employment in response to a summons for reasons never identified in the record but presumed to be compelling at a time *earlier* than his usual shift. In *Los Angeles Jewish etc. Council v. Industrial Acc. Com.* (1949) 94 Cal.App.2d 65 [209 P.2d 991], the employee, a rabbi and a librarian, was at the time of injury in transit to his place of employment at an unusual hour per his employer's request, to perform special tasks.

In discussing the significance of an employee's "on call" status, *Schreifer* pointed out that "the fact that a particular mission is encompassed within the terms of hire, even contemplated at the time the employment began, is not determinative. Nearly every employment relationship contemplates that extraordinary needs may arise and must be met. 'Special' means extraordinary in relation to *routine* duties, not outside the scope of the employment." (61 Cal.2d p. 295; italics added.) Nothing in *General Insurance, supra,* 16 Cal.3d 595, compels us to order the award annulled; the facts in that case were readily distinguishable in that the employee was making his routine commute somewhat earlier than usual for no special reason requested by the employer.

The authorities on workers' compensation law discuss employment subject to call as an element in a particular case which is not determinative but requires further analysis. It is deemed important whether the employee's transit was in response to a special request and what the request was for. (See, 1 Larson, Workmen's Compensation Law (1972) § 16.12; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1981) § 9.03.) It is significant that the Larson text explains the *Schriefer* decision as based on the fact that there was "a very substantial variation in the employee's usual hours" (Larson,

*supra*, § 16.12, p. 4-143) and observes that an off-premises journey may be brought within the course of employment "by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances" and thus renders the journey itself "an integral part of the service [required of the employee] ..." (§ 16.10, p. 4-123). Hanna notes that a mission is deemed special; i.e., substantial, when its performance requires a special trip, *or the regular trip at a special time*. (2 Hanna, *supra*, § 9.03 [3][c][iv], pp. 9-42, 9-43.) (Italics added.)

I conclude, on the basis of the record before us, that there was substantial evidence in support of the decision awarding applicant Hancock compensation on the basis that his transit was within the ambit of either the special mission exception to the "going and coming" rule or that the requirements of his employer on this occasion rendered the off premises journey part of the job. In addition, while not as fully factually developed as it could have been, the record gives rise to the argument that 24-hour call reasonably contemplates journeys at hours on occasion when public transportation would not be available and in all likelihood the employee would be compelled to use his own automobile to respond to the employer's request. Such circumstances, of course, dictate coverage for workers' compensation benefits. I reiterate that our judicial task is not to search out exclusionary facts but to bring the employee within the protection of workers' compensation laws if it is reasonable to do so. In the case at bench, in my view, reason compels affirming the decision of the board awarding the benefits to applicant Hancock.

The petition of respondent Hancock for a hearing by the Supreme Court was denied September 10, 1981. Bird, C. J., was of the opinion that the petition should be granted.