[Civ. No. 17150.  Second Dist., Div. Three.  Oct. 7, 1949.]

LOS ANGELES JEWISH COMMUNITY COUNCIL (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, MARGARETA FREDERIKA COHN et al., Respondents.

Kearney, McCartney, Scott & Clopton for Petitioners.

T. Groezinger and Alvin L. Dove for Respondents.

SHINN, P. J.—A writ was heretofore issued on petition of Los Angeles Jewish Community Council and National Automobile and Casualty Insurance Company for the review of an award of $6,000 by the Industrial Accident Commission as a death benefit to Margareta Frederika Cohn, widow of Rabbi Emil Bernard Cohn. In the petition the statement of question involved reads as follows: ''Whether the Industrial Accident Commission's affirmance of findings and award on rehearing, said affirmance being based upon an erroneous assumption of facts by the referee, should be permitted to stand.'' We shall discuss this question later. As we view it the question, also argued by petitioners, is whether, at the time of his death, Rabbi Cohn was going to his place of employment, as usual, to perform his customary duties as part-time librarian or was engaged on a special mission for his employer, the Community Council. If the former, his widow would be excluded from the benefits of the Workmen's Compensation Act under the ''going and coming'' rule. If the latter, and the fatal accident arose out of and in the course of decedent's employment, the case would come within an exception to the rule and the death would be compensable.

Decedent's usual hours of employment as part-time librarian were from 2 p. m. to 6 p. m., five days per week, Monday through Friday. The library was normally not open on Saturdays or Sundays. For some months prior to the opening of the library, the duties of the employee were to catalogue the volumes belonging to the library. The library committee of the employer was to be informed when the cata-

loguing was to be completed and the library ready for opening. At the time of hiring, no precise arrangements for the opening were made. The deceased, however, was aware that the opening week would include Saturday, and that he would be expected to be present in the evenings for that opening week.

Approximately two months before the completion of the cataloguing of the books, the deceased informed the library committee of the approximate date of completion. On January 7, 1948, the committee voted to open the library during the week beginning February 22, 1948, and to combine with the opening a "special celebration or reception." The minutes of the employer's library committee, dated February 18, 1948, contain the following: "The Los Angeles Jewish Community Library will be formally opened on Sunday, February 22nd at 2:00 P. M. It will be open Sunday, Monday, Tuesday, Wednesday, Thursday from 2:00 P. M.-5:00 P. M., and from 8:00 P. M.-10:00 P. M. The week will close Saturday 8:00-10:00 P. M. On Sunday afternoon Mrs. Samuel Moss, President of the Conference of Jewish Women's Organizations, the hostess group will preside. The following will be introduced to speak for a few moments: Mr. Charles Brown and Mr. Peter Kahn, acting chairman of the Library committee. *Dr. Emil Bernhard Cohn will be prepared to give a short talk at each session.* Each host group will be responsible for a short program." (Emphasis added.) The decedent was notified of the fact that he was to give short talks in the evenings, during the opening week. The library was closed until sundown on Saturday, February 28, 1948, and the deceased did not work from 2 p. m. to 6 p. m. on that day. Mr. Schapiro, a member of the library committee, and a former head of the Hebraic Department of the Library of Congress, had been appointed to make recommendations concerning the purchase of books. On Saturday morning, February 28, 1948, he telephoned Rabbi Cohn and requested that he come to the library early that evening to inspect and discuss certain purchases. The deceased agreed to come at the earlier hour. Rabbi Cohn on the preceding nights during the opening ceremonies had left his home at about 7:45 or 7:50 and had arrived at work at 8 or 8:05 p. m. After rehearsing to his wife the speech he was to deliver at the library, the Rabbi left his home on Saturday night, February 28, 1948, at about 7:15 or 7:20 p. m., to go to the library. He was carrying a book belonging to the library. At 7:45 p. m., or thereabouts,

while crossing the street in the vicinity of the library he was struck by an automobile and received injuries which resulted in death.

Dr. Schapiro testified that Dr. Cohn had received certain books which had been ordered upon his recommendation and that he "ordered" Dr. Cohn to come to the library "an hour ahead of time to be there to show me the books that he received." The occasion for this arrangement was that Dr. Schapiro was usually out of the city but, as he intended to be present at the ceremony that evening, considered that it would be a good time to discuss the books with Rabbi Cohn.

The circumstances of the case are most unusual. It was a part of Dr. Schapiro's duties to recommend books and it was a part of Rabbi Cohn's duties to see that they were obtained. Inspecting them after their receipt was in the line of the duties of both men. However, Rabbi Cohn's ordinary duties as librarian were performed between 2 p. m. and 6 p. m. from Monday to Friday, inclusive, of each week. He attended the ceremonies during the evenings of the week in question for the special purpose of conducting the ceremonies and delivering a brief talk. There was testimony that these latter services were discussed at the time of his employment and were among his understood duties. Inspecting books at the library was not a part of Rabbi Cohn's duties to be performed in the evenings. It might be argued with much reason from the evidence that he was not required as part of his regular duties to comply with Dr. Schapiro's request. In fact it would appear from Dr. Schapiro's testimony that he considered his request an unusual one and there was no evidence that Rabbi Cohn had previously been requested to perform or had performed such duties except during the course of his daytime employment. The circumstances required the drawing of a rather fine distinction in order to classify Rabbi Cohn's trip to the library in response to Dr. Schapiro's request as a special mission, but we nevertheless think that sufficient reason existed for classifying it as such. In two respects the employee was called upon to deviate from the usual course of his services: he was requested to come to the library at an earlier hour than was usual or necessary in order to fulfill the conditions of his employment; and the services to be rendered to Dr. Schapiro were not the usual ones agreed to be performed and which were usually performed by Rabbi Cohn in the evenings. These circumstances justify the conclusion that his trip was an extraordi-

nary event which was necessary in the performance of a special service beyond the scope of the employment agreement.

If decedent was on a "special errand" or "special mission" he was rendering services for his employer from the time he left home. Mr. Campbell, in his work on Workmen's Compensation, volume 1, section 184, page 173, states the rule as follows: "Where an employee is requested by his employer to return and do 'a service outside his regular duty,' the sole purpose of which was to help his employer in the latter's business, a different rule applies, and the employee is then on a special errand. The special request for unusual service is the decisive factor which brings the employee, throughout the entire trip to and from the place of business, in the course of rendering a service for the employer. In all these cases, confusion is avoided if the test be applied, 'Was the employee at the time rendering service for the employer within the meaning of the Act?'" (See, also, *State C. I. Fund* v. *Industrial Acc. Com.*, 89 Cal.App. 197 [264 P. 514]; *Robinson* v. *George,* 16 Cal.2d 238 [105 P.2d 914]; *Dauphine* v. *Industrial Acc. Com.*, 57 Cal.App.2d 949 [135 P.2d 644]; *Sun Indem. Co.* v. *Industrial Acc. Com.*, 76 Cal.App. 165 [243 P. 892].) The conclusion of the commission in the present case that the employee was on a special errand is in harmony with the holdings in the foregoing cases.

The award was reviewed on a rehearing and affirmed by the commission. Petitioner contends that the referee, who acted throughout, concluded that the decedent was injured in the course of his employment under a mistaken belief that the decedent had worked at the library in the afternoon of the day of his death and was returning to work in the evening. As we read the record, the reverse is true. The referee recommended a rehearing under the impression that decedent had worked in the afternoon and that the case might fall within the "going and coming" rule. The award was affirmed when the referee became satisfied from the evidence that decedent had not worked during the afternoon. The record leaves no doubt on this point.

The award is affirmed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied October 24, 1949.