[L.A. No. 30542. In Bank. Mar. 26, 1976.]

GENERAL INSURANCE COMPANY OF AMERICA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
LILIA CHAIREZ, Respondents.

596

**COUNSEL**

Kendig, Stockwell & Gleason and Zachary H. Sacks for Petitioner.

Philip M. Miyamoto, Rose, Klein & Marias and Jason A. Gottlieb for Respondents.

**OPINION**

**CLARK, J.**—Petitioner seeks review of a workers' compensation award to an employee's widow contending the going and coming rule precludes her recovery.

Edward Chairez, the deceased, was employed as a delivery and service man, his work day commencing at 8 a.m., including Saturday. He commuted to work in his personal automobile, departing from his residence at approximately 7:30 a.m. The employer did not compensate its employees for their commute expense or for their activities prior to 8 a.m.

The employer's place of business is on South La Cienega Boulevard in Los Angeles. The few parking spaces on the premises were used for business vehicles, being unavailable for employee parking. Employees customarily parked their cars around the corner on streets perpendicular to or in back on a street parallel to La Cienega. A city ordinance precluded parking on La Cienega itself from Monday through Friday.

All eight employees possessed keys to the employer's business. The first employee to arrive for work customarily entered and made coffee. The employer provided the coffee and coffee pot.

On the Saturday of his death, Chairez left his residence at 6:15 a.m., informing his wife he was leaving early to buy gas and to stop for coffee at the business. There being a fuel shortage, it was then necessary to wait in line for gasoline. At approximately 7:15 a.m., Chairez parked his car on La Cienega in front of his employer's premises. As Chairez alighted from his car he was struck by a passing motorist.

The referee awarded benefits, determining that Chairez' death occurred in the course of employment. The referee reasoned that once Chairez stopped his vehicle in front of his place of employment, at an hour compatible with entry for purposes of engaging in employment related activities, his conduct came within the reasonable contemplation of his employment. On petition for reconsideration, the Workers' Compensation Appeals Board adopted the referee's decision.

### APPLICABILITY OF GOING AND COMING RULE

■ The going and coming rule precludes compensation for injury suffered during the course of a local commute to a fixed place of business at fixed hours in the absence of exceptional circumstances. (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].)

For purpose of the rule, the employment relationship does not begin until an employee enters the employer's premises. Prior to entry the going and coming rule ordinarily precludes recovery; after entry, injury is generally presumed compensable as arising in the course of employment. (*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329, 336 [170 P.2d 18]; *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751, 755 [135 P.2d 158]; 1 Larson, Workmen's Compensation Law (1972) §§ 15.00-15.11, pp. 4-2—4-4.) The employer's premises include his

parking lot as well as plant or office, and once the employee has reached the premises, employment is not interrupted by crossing public property while travelling from one part of the premises to another. (*Lewis* v. *Workers' Comp. Appeals Bd.* (1975) 15 Cal.3d 559, 563 [125 Cal.Rptr. 353, 542 P.2d 225].)

The "premises line" has the advantage of enabling courts to ascertain the point at which employment begins—objectively and fairly. This outweighs the disadvantages incurred by attempting to formulate and apply a subjective rule justly. As Professor Larson has so clearly pointed out, "[i]t is a familiar problem in law when a sharp, objective, and perhaps somewhat arbitrary line has been drawn . . . to encounter demands that the line be blurred a little to take care of the closest cases. For example, one writer says that there is no reason in principle why states should not protect employees 'for a reasonable distance' before reaching or after leaving the employer's premises. This, however, only raises a new problem . . . because it provides no standard by which the reasonableness of the distance can be judged. It substitutes the widely-varying subjective interpretation of 'reasonable distance' by different administrators and judges for the physical fact of a boundary line. At the same time, it does not solve the original problem, because each time the premises are extended a 'reasonable distance,' there will inevitably arise new cases only slightly beyond that point—and the cry of unfairness of drawing distinctions based on only a few feet of distance will once more be heard." (1 Larson, *supra*, § 15.12, pp. 4-5—4-6; fn. omitted.)

Although broad language in some cases seemingly extends the "premises line," the language must be read in context, and when this is done, it becomes apparent the cases are fully consistent. Several cases broadly state "the term 'employment' has been held to include 'not only the doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.' [Citations.]" (E.g., *Pacific Indem. Co.* v. *Industrial Acc. Com.*, *supra*, 28 Cal.2d at p. 336, quoting from *Cal. Cas. Ind. Exch.* v. *Ind. Acc. Com.* (1943) 21 Cal.2d 751, 754 [135 P.2d 158]; see *Lewis* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.3d 559, 561, 563; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1975) § 9.02 [3][b], pp. 9-15—9-16.) In most of the cases, the employee had entered the employer's premises prior to injury and was injured while travelling from the point of entry to his work station. (E.g., *Lewis* v. *Workers' Comp. Appeals Bd.*, *supra*, 15 Cal.3d 559.) Within such factual context, the language does not establish that the employment relation commences

before entry into the business premises. The remaining cases involve special risks encountered in entering—a subject discussed later. (E.g., *Pacific Indem. Co.* v. *Industrial Acc. Com. (Henslick)* (1946) 28 Cal.2d 329 [170 P.2d 18]; *Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490 [47 Cal.Rptr. 384, 407 P.2d 296].)

■  The facts of the instant case show that Chairez had not entered the employment premises prior to his death. Chairez parked his car, suffering his injuries on the street. Accordingly, the going and coming rule applies, and Chairez' death is not compensable as having occurred upon the premises. However, we must determine if compensation is due under some exception to the going and coming rule.

## SPECIAL RISK EXCEPTION

■  If, prior to entry upon the premises, an employee suffers injury from a special risk causally related to employment, the injury is compensable under the "special risk" exception to the going and coming rule. "The facts that an accident happens upon a public road and that the danger is one to which the general public is likewise exposed, however, do not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree." (*Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, 12 [118 P.2d 809]; 1 Larson, *supra,* § 9.30, pp. 3-48—3-50.)

Thus, in *Freire* we held that an employee injured on a bulkhead while attempting to enter the employer's premises was within the ambit of workers' compensation because "the plaintiff [employee] by reason of his employment was subjected to the risks arising on the bulkhead peculiarly and to an abnormal degree." (19 Cal.2d at p. 13.)

Similarly, the special risk exception was held applicable in *Pacific Indem. Co.* v. *Industrial Acc. Com. (Henslick) supra,* 28 Cal.2d 329 and *Greydanus* v. *Industrial Acc. Com., supra,* 63 Cal.2d 490. In both *Henslick* and *Greydanus* the employees were injured in accidents while making left turns on a public street to the employers' premises in the face of oncoming traffic. In both cases we held the making of a left turn exposed the employee to a particular risk—one distinctive in nature—not shared by the public generally. (*Henslick, supra,* 28 Cal.2d at pp. 337-338; *Greydanus, supra,* 63 Cal.2d at p. 493; see generally, 1 Larson, *supra,* § 15.13, pp. 4-7—4-19.)

■ The facts of the present case show that Chairez' injury was causally related to his employment. But for his job, Chairez would not have been on La Cienega that morning. However, Chairez' death does not come within the second requirement of the special risk exception—that the risk is distinctive in nature or quantitatively greater than risks common to the public. Chairez was parked on a public street at a time and in a location where parking is available to the general public. The fact that he was struck by a passing motorist, while tragic, is a type of risk the public is subject to daily. Moreover, nothing in the facts indicates Chairez was exposed to a greater risk from passing motorists than was anyone else on La Cienega that morning.

### SPECIAL MISSION EXCEPTION

■ An injury suffered by an employee during his regular commute is compensable if he was also performing a special mission for his employer. (2 Hanna, *supra,* § 9.03[3][iv], pp. 9-41—9-43.) The employee's conduct is "special" if it is "extraordinary in relation to routine duties, not outside the scope of employment." (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 295 [38 Cal.Rptr. 352, 391 P.2d 832].) The special mission rule "is ordinarily held inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual." (1 Larson, *supra,* § 16.12, p. 4-98.)

■ In the circumstances of this case, preparing coffee was, at most, part of the routine duties of the first arriving employee. Such preparation did not require a special trip to the office and was not exceptional in terms of the ordinary duties of the employees. So far as appears, the employer did not request or even expect that employees would arrive earlier than usual for the purpose of preparing coffee. The mere fact that the employee chose to go to work early—without request—for the purpose of preparing coffee does not turn the ordinary commute into a special mission warranting exception from the going and coming rule.

The instant case is distinguishable from those where the employee goes to work early not for the purpose of performing routine duties, but for an extraordinary purpose at the special request of the employer. (*L.A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65, 68 [209 P.2d 991]; *Fenton* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 379, 381 et seq. [112 P.2d 763].) Likewise distinguishable are cases where the employee is required to make an extra trip to work in addition to his ordinary commute. (E.g., *State C. I. Fund* v. *Indus. Acc. Com.* (1928) 89

Cal.App. 197, 199 et seq. [264 P. 514].) In such cases, the special purpose of the trip or the fact that it is in addition to the ordinary commute, provides the extraordinary circumstance warranting exception from the going and coming rule. In the instant case, the trip was an ordinary commute for the purpose of performing an ordinary chore, preparation of coffee. There is nothing in the employee's choice of arriving at work earlier than usual constituting an extraordinary circumstance warranting exception from the going and coming rule.

The award is annulled.

Wright, C. J., McComb, J., Sullivan, J., and Richardson, J., concurred.

**TOBRINER, J.**—I dissent.

The board properly ruled that the employee was covered by compensation in this case; the employee's trip to work prior to the time of his routine commute for the purpose of making coffee for his fellow employees falls within the "special mission" limitation of the "going and coming" rule. Adopting the findings of the referee, the board found that the special activities of the employee "were with the expressed or implied permission of the employer and for his benefit." The performance of an added task, no matter how minor, undertaken for the benefit of the employer, entailing an early appearance of the employee on the job, carries with it the corresponding protection from loss incurred in the pursuit of that employer-ordained mission.

California's "going and coming" rule is not legislatively mandated or enacted, but judicially conceived and created. (*Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 153 [104 Cal.Rptr. 456, 501 P.2d 1176].) The courts have recognized that the judicial rule is not ubiquitous but necessarily limited; one important limitation is the "special mission" reservation, which permits recovery if an employee is injured, whether on his own time or on that of his employer, while in the execution of a "special mission" for his employer. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1975) § 9.03, p. 9-24.)

A "special mission" may occur when an employee makes a regular trip to work at a *special time*. (*Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832]; *Fenton* v. *Industrial Acc. Com.* (1941) 44 Cal.App.2d 379, 382 [112 P.2d 763]; *L. A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65, 69 [209 P.2d 991].) To

constitute a "special mission," the activity which necessitates the trip need not be "outside the scope of employment"; it is sufficient that the activity be "extraordinary in relation to routine duties." (*Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d at p. 295.)

In the present case, decedent travelled to work at a special time to perform a service which was "extraordinary in relation to [his] routine duties." Decedent was employed as a delivery and service man at Martin Rents. He worked six days a week, and normally left home at approximately 7:30 a.m. Preparation of coffee is not a routine duty of a delivery and service man, but on Saturdays decedent travelled to work prior to the time of his regular commute for the purpose of making coffee for fellow employees. The employer had given decedent a key to the premises, enabling him to enter upon his early arrival, and had provided a coffee pot and coffee.

The majority states that the preparation of coffee was "part of the routine duties of the first arriving employee." Employees of Martin Rents may have customarily prepared coffee upon arrival at the normal hour, but none of the evidence received at the referee's hearing indicates that employees other than the decedent travelled to work early to perform this service.

Decedent, however, made a trip to work at a special hour on Saturdays so that the preparation of coffee could be accomplished before the working day began. Performance at a special time of a service routinely performed by employees during the normal work day constitutes a "special mission." In *Schreifer* v. *Industrial Acc. Com., supra,* this court upheld the award of benefits when a sheriff was injured while travelling to work before his scheduled shift at the request of his employer, although he would have performed normal duties upon arrival. In *L. A. Jewish etc. Council* v. *Ind. Acc. Com., supra,* the court sustained an award because decedent librarian was killed while driving to work early in order to inspect and discuss the purchase of some books, an activity which the court noted was within the normal duties of the employee. Likewise in the present case, decedent's trip to work before the time of his normal commute to perform a service for the benefit of his employer constitutes a "special mission" and mandates the award of benefits.

In holding the "special mission" limitation inapplicable in the present case, the majority also relies upon the absence of a direct request by the employer that the deceased arrive early to prepare coffee. This reliance is

misplaced, for "the cases which have considered the scope of the special mission doctrine have not held it essential that the special activity involved be required by the employer as a condition to employment." (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 867 [101 Cal.Rptr. 105, 495 P.2d 433].) Indeed, the courts have specifically observed that the "going and coming" rule is inapplicable when an employee "engage[s] upon a mission which *incidentally* or *indirectly* contribute[s] to the service and benefit of the employer." (*Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426, 428 [18 Cal.Rptr. 540]; italics added.) As we stated in *Smith* v. *Workmen's Comp. App. Bd.* (1968) 69 Cal.2d 814, 820 [73 Cal.Rptr. 253, 447 P.2d 365], "An employer cannot request or accept the benefit of an employee's services and concomitantly contend that he is not 'performing service growing out of and incidental to his employment.' "

In the present case, decedent's employer expressly sanctioned the making of coffee by providing the coffee and the urn, and by giving decedent a key to the premises so that he could enter upon his early arrival to perform this service. The employer thus knew of and sanctioned the early arrival; the employer knew of, and expected the special and early mission, distinct from the normal routine commute. The employer sanctioned and expected this special, if minor, service probably because the availability of coffee contributed to the contentment and productivity of his employees, thus benefiting the business as a whole. The referee specifically found that the activities of the deceased "were with the expressed or implied permission of the employer and for his benefit." Under these circumstances a direct request by the employer that the employee perform this service was not necessary to bring the trip within the "special mission" limitation.

The majority's rigid and static concept of the "going and coming" rule constitutes a retreat from our previous position that "the so-called going and coming rule composes no formula of automatic application." (*Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d at p. 156.) The fact that decedent travelled to work prior to the time of his routine commute for the purpose of performing an activity sanctioned by, and beneficial to, his employer is sufficient to bring the trip under the "special mission" exception to the "going and coming" rule. Moreover, we have held in the past that " '[a]ny reasonable doubt as to whether the act is contemplated by the employment, in view of this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee.' " (*Pacific Indem. Co.* v. *Ind. Acc. Com.* (1945) 26

Cal.2d 509, 514 [159 P.2d 625]; *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 865.)

Thus, the majority overturns the award granting recovery in this case; it distends the going and coming rule; it converts a special mission into a routine commute.

I would affirm the award.

Mosk, J., concurred.