[Civ. No. 69688. Second Dist., Div. Four. Feb. 21, 1984.

JOSEPH PEREZ, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
McDONNELL DOUGLAS CORPORATION et al., Respondents.

## Counsel

Edward C. Reid for Petitioner.

Mouser, Channels & Roberts and F. Whitfield Giddens for Respondents.

OPINION

**WOODS, P. J.**—Petitioner Joseph Perez seeks review of the order of respondent Workers' Compensation Appeals Board denying reconsideration of the order and findings of the workers' compensation judge disallowing benefits to Perez for injuries sustained while he was en route from his workplace to attend a specially called union meeting. As we shall explain, petitioner is entitled to relief.

In October 1982, petitioner was employed as a tank test mechanic by McDonnell Douglas Corporation. He was also a member of the United Auto Workers Union. The existing union contract had expired, but the union member employees remained working under the old contract. Numerous aircraft projects were in progress at the company, including a new DC 9 Super Jet which the company was introducing in competition with Boeing Aircraft. The company was in negotiations with the union for a new contract in order to ward off a strike. Company officers periodically announced over the public address system at its plant the progress of the negotiations "for the purpose of providing some urgency or getting production going or keeping it going."

Petitioner was not an official of the union, but he was a member of the local bargaining unit, qualified to vote on ratification. He was aware of the negotiations between the company and the union, and he testified that he had been "on strike" on a previous occasion.

A proposed contract was negotiated, and the company posted a notice at the workplace that members of the union who worked the "first shift" (7 a.m. to 3:30 p.m.) could "clock out" at 11:30 a.m. on October 17, 1980, to attend the ratification meeting, called by the union to vote on ratification of the contract. The notice stated that the members of the first shift were not expected to return to the workplace after the meeting, that members on the second shift could report to work after the meeting, and that "[t]he company hopes that a positive ratification vote will result from this action. . . ."

This trip was contemplated by and consented to by the employer. Wages were paid to the first shift employees only for the time worked before they clocked out. No wages or other expenses were paid for time spent during this meeting or in traveling to or from it.

At 11:30 a.m. on October 17, 1982, petitioner and a coworker on the first shift clocked out and proceeded in the coworker's automobile to the Los Angeles Convention Center where this specially called meeting was

being held.[1] En route the automobile collided with another automobile, resulting in the serious injuries for which petitioner seeks compensation benefits.

The workers' compensation judge found that petitioner's injuries were not sustained in the course of his employment, since he came within the "going and coming" rule and did not come within the "special mission" exception to the rule. In his report on reconsideration, the judge concluded that the facts herein were distinguishable from the facts in a prior decision by the board in *Xerox Corporation* v. *Workmen's Comp. Appeals Bd.* (1968) 33 Cal.Comp. Cases 178. The board adopted the judge's report and denied reconsideration.

The "going and coming" rule provides that in the absence of special circumstances an employee is barred from compensation for injuries suffered while traveling to or from the workplace. (*Parks* v. *Workers' Comp. Appeals Bd.* (1983) 33 Cal.3d 585, 589, fn. 1 [190 Cal.Rptr. 158, 660 P.2d 382]; *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176].) The rule precludes compensation for injuries sustained "during a local commute enroute to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances." (*Hinojosa, supra,* at p. 157; *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595, 598 [128 Cal.Rptr. 417, 546 P.2d 1361]; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1980) 104 Cal.App.3d 528, 535 [163 Cal.Rptr. 750].) Thus, ordinarily, the rule operates to preclude compensation for injury which occurs while an employee is driving to or from work (*Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860, 866 [101 Cal.Rptr. 105, 495 P.2d 433]), on the theory that the employer-employee relationship is suspended from the time the employee leaves the workplace until he resumes work (*Bramall* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151, 157 [144 Cal.Rptr. 105]).

The going and coming rule is, however, a judicially created rule that has been widely criticized and excepted to the point where the rule has been swallowed by the exceptions. (See *Parks* v. *Workers' Comp. Appeals Bd., supra,* 33 Cal.3d at p. 589; *Hinojosa* v. *Workmen's Comp. Appeals Bd., supra,* 8 Cal.3d at p. 156; *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289, 291 [83 Cal.Rptr. 352, 391 P.2d 832]; *Bramall* v. *Workers' Comp. Appeals Bd., supra,* 78 Cal.App.3d at p. 156.)

Among the exceptions to the rule is the "special mission" or "special errand" exception. (*Schreifer* v. *Industrial Acc. Com., supra,* 61 Cal.2d

---

[1] Regular union meetings were held at the UAW union hall.

at p. 291; see *Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 158, 166 [151 Cal.Rptr. 666, 588 P.2d 806]; *General Ins. Co.* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.3d at p. 601; *Safeway Stores, Inc.* v. *Workers' Comp. Appeals Bd., supra,* 104 Cal.App.3d at p. 535; *Xerox Corporation* v. *Workmen's Comp. Appeals Bd., supra,* 33 Cal.Comp.Cases at pp. 179-180; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1983) § 9.03(3)(c)(iv).)

Under the special mission exception, an injury sustained by an employee during his regular commute is compensable if he was also performing a special mission for his employer. (*Southern California Rapid Transit Dist., Inc.* v. *Workers' Comp. Appeals Bd., supra,* 23 Cal.3d at p. 166.) A study of cases has shown that the rationale for the going and coming rule has in effect been abandoned in the special mission cases. (*Schreifer* v. *Ind. Acc. Com., supra,* 61 Cal.2d at p. 291, fn. 1.)

An injury sustained by an employee attending a regularly scheduled union business meeting was held noncompensable on the grounds that the business conducted in no way benefited the employer. (*Pacific Ind. Co.* v. *Industrial A. Com. (Kendall)* (1938) 27 Cal.App.2d 499 [81 P.2d 572].) That rationale is not applicable to the facts before us. Many courts have found a "special mission" and/or a "dual purpose" in activity which we believe to be far less related to the employer-employee relationship than the instant employee's permitted attendance at a specially called union meeting, held for the specified purpose of attempting to avoid a strike by ratification of the contract of employment. (See *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d 860; *Schreifer* v. *Ind. Acc. Com., supra,* 61 Cal.2d 289; *Bramall* v. *Workers' Comp. Appeals Bd., supra,* 78 Cal.App.3d 151; *Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426 [18 Cal.Rptr. 540]; *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777, 789; *L. A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65 [209 P.2d 991].)

▆▆▆ In the circumstances here, McDonnell Douglas clearly had a vested interest in consummation of a viable contract with the union.[2] The existing contract had expired, substantial projects were in production, the employees were working on the projects while the company was endeavoring to negotiate a new contract, the company was periodically reporting progress of the negotiations to the employees over its public address system in order to encourage urgency in maintaining production. The company, at the request of the UAW, permitted the employees, as a special one time only accom-

---

[2]Such a vested interest was implicitly acknowledged by the Board in its decision in *Xerox Corporation* v. *Workmen's Comp. Appeals Bd., supra,* 33 Cal.Comp.Cases 178, 180.

modation, to attend the ratification meeting. Clearly the company hoped a positive ratification vote would ensue. Employee attendance would tend to ensure a plurality of members and be more likely to achieve an effective vote on ratification. Thus, petitioner's attendance at the meeting was substantially connected to the employment and materially benefited the employer. (See *Shell Oil Co.* v. *Industrial Acc. Com., supra,* 199 Cal.App.2d at p. 429.)

■ Where, as here, the pertinent facts are not in dispute, the question whether the employee sustained injury in the scope of his employment presents a question of law; and the reviewing court is not bound by the board's conclusionary findings on that issue. (*Bramall* v. *Workers' Comp. Appeals Bd., supra,* 78 Cal.App.3d at p. 155; see *Dimmig* v. *Workmen's Comp. Appeals Bd., supra,* 6 Cal.3d at p. 864.)

■ Consequently, we conclude as a matter of law that the board erred in determining that petitioner did not sustain injuries arising out of and in the course of his employment.

The order of respondent board denying reconsideration and the findings and order of the workers' compensation judge are annulled; and the matter is remanded for further proceedings consistent with the views expressed herein.

Kingsley, J., concurred.

**AMERIAN, J.**—I dissent.

The bulletin from the president of petitioner's employer was addressed to all employees and stated, in full,

"To: All Douglas Aircraft Company Employes [*sic*]

"1. At the request of the UAW, the Company has agreed to release UAW represented employes [*sic*] from work on Friday, 17 October 1980 at 11:30 a.m. for the purpose of attending a ratification meeting. This is a one time nonprecedent accommodation resulting from the unique circumstances whereby the UAW contract expiration (including seven day roll) falls during a three day weekend.

"2. All first shift UAW represented employes [*sic*] must clock out at 11:30 a.m. and will not be expected to return to work following the ratifi-

cation meeting. Second shift UAW represented employes [*sic*] should report to work as soon as possible after the ratification vote. UAW represented employes [*sic*] will be paid only for actual hours worked on Friday, 17 October 1980.

"3. All first and second shift employes [*sic*] not in a UAW bargaining unit will work their normal hours.

"4. The Company hopes that a positive ratification vote will result from this action and allow an uninterrupted three day weekend for all employes [*sic*] except those scheduled to work.

"[/S/ by President] J. C. Brizendine."

My colleagues see the trip to the union meeting as a trip which "was substantially connected to the employment and materially benefited the employer." (Majority opn., *ante,* p. 65.)

The trip to attend the meeting was not connected with the employment. Petitioner had clocked out. He did not receive reimbursement for mileage to attend the meeting. He received no pay for attending the meeting. He arranged for his own private transportation to the meeting. He was a rank and file union member, not a member of the negotiating committee. According to petitioner, the purpose of the meeting was to present the issues in the new contract. He testified that there was to be no voting involved at the meeting and that the vote on the contract was to come two to three weeks after the meeting he was on his way to attend. At argument counsel conceded that there was nothing in the record as to whether there was any quorum requirement for the meeting.

I see no benefit to the employer from a trip by employees on their own time, in their own vehicles, to a central location for the purpose of discussing the terms of and eventually taking a vote on a contract which has been hammered out during negotiations. It goes without saying that the employer is interested in the outcome of any vote and I will concede that the employer under these circumstances may well be hoping for a favorable vote, i.e., ratification of the contract provisions agreed upon during the collective bargaining process. This is so because if the union membership votes to reject the agreement, the employer may be required to return to the bargaining table and might be forced to make additional concessions in order to reach an agreement which is acceptable to the membership.

In *Xerox Corporation* v. *Workmen's Comp. Appeals Bd.* (1968) 33 Cal.Comp.Cases 178, the employee was the president of his local union and

a member of the labor management negotiating committee which was negotiating the contract. At the time of the vehicle accident, he was traveling home in order to change clothes to attend the negotiating meeting. That employee was receiving pay from his employer for the time he traveled. The trip in question was contemplated by the employer and consented to by the employer. The WCAB found that the injury arose out of the course of employment.

In virtually every way, *Xerox Corporation* is distinguishable from the facts in the case presented to us. Additionally, petitioner was in no manner compelled to attend the meeting. When he clocked out in accordance with paragraph 2 of the bulletin, he was free to attend to personal business, engage in recreational pursuits or attend the meeting, whatever suited his fancy at that time.

Distinguishable, too, are cases cited by the majority as finding a special mission or dual purpose in order to avoid the going and coming rule in circumstances "far less related to the employer-employee relationship." (Majority opn., *ante,* p. 64.)

In *Dimmig* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 860 [101 Cal.Rptr. 105, 495 P.2d 433], an auto accident occurred while the employee was returning to his home from a night college class. The employer had a policy of encouraging employees to attend college. When a course was completed successfully, the employer would reimburse the entire cost of tuition and books for courses directly related to the job and 50 percent of such costs for courses not directly related to the job but required for the degree sought. The stated purpose of the employer in adopting the program was to encourage personnel to further their education in order to perform more effectively in their present jobs and to increase their qualifications and knowledge for advancement purposes. The court held the injury occurred while traveling from a *special activity within the course of employment and undertaken at the request or invitation of the employer.*

In *Schreifer* v. *Industrial Acc. Com.* (1964) 61 Cal.2d 289 [38 Cal.Rptr. 352, 391 P.2d 832], a deputy sheriff had been called at home and instructed to report for duty "as soon as possible." The call was received six hours before his regularly scheduled work shift was to begin. He was involved in an automobile accident on his way to the station. The court found that, "[m]aking the trip at that time was a special service." (At p. 294.)

In *Bramall* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 151 [144 Cal.Rptr. 105], a legal secretary was injured in an auto accident on her way home from her place of employment. She had with her two depo-

sitions in Spanish. Part of her secretarial duty was to translate the depositions into English and she was taking them home for that purpose. The taking of work home was a normal practice for the employee and approved by the employer. The court concluded that because of the dual purpose, it was error to find that the injuries were not sustained in the course of employment.

In *Shell Oil Co.* v. *Industrial Acc. Com.* (1962) 199 Cal.App.2d 426 [18 Cal.Rptr. 540], a person employed as a service station manager was killed in an auto collision. At the time of the accident he was returning to his service station and was towing his automobile. The car had broken down on his way to a meeting of Shell dealers. The dinner meeting was called by the employer to introduce a local radio advertising project, to present a skit on service station operation and to afford a forum for a talk by the district sales manager. The court concluded that the mission was of service and benefit to the employer.

In *L. A. Jewish etc. Council* v. *Ind. Acc. Com.* (1949) 94 Cal.App.2d 65 [209 P.2d 991], the employee was struck by a car while walking to his place of employment as a part time librarian. He had been requested by his employer to come to the library on a date and at a time when he otherwise would not have been working. At the time of the accident he was carrying a book belonging to the library and was going to a meeting to discuss the purchase of books. The court found that the conclusion that the employee was on a special errand was appropriate.

In *Boynton* v. *McKales* (1956) 139 Cal.App.2d 777 [294 P.2d 733], the question of status of an employee was raised in the context of a personal injury action. The plaintiff had been struck by a car driven by an employee returning home from a banquet given by his employer. The plaintiff prevailed at trial against both employee and employer. The trial court denied a motion of the employer for judgment notwithstanding the verdict and on appeal that ruling was affirmed.

The court stated, "The attendance at a social function, although not forming part of the normal duties of the employee, may come under the 'special errand rule' if the function or the attendance was connected with the employment and for a material part intended to benefit the employer who requested or expected the employee to attend." (*Boynton* v. *McKales, supra,* at p. 789.) There was evidence to support a jury conclusion that the banquet "was an official company function with close relation to its sales program and intended to benefit the company by increase in the continuity of employment . . . the attendance at which was at least expected from the employees." (At p. 791.)

I cannot see this case as coming within either the dual purpose or the special mission exception to the going and coming rule. I would affirm the order of the Workers' Compensation Appeals Board.

The petition of respondents McDonnell Douglas Corporation and Industrial Indemnity Company for a hearing by the Supreme Court was denied April 26, 1984. Lucas, J., was of the opinion that the petition should be granted.