[No. E021529. Fourth Dist., Div. Two. Oct. 22, 1998.]

G.E. ENGINE MAINTENANCE et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and CRAIG MAIN,
Respondents.

---

---

**COUNSEL**

Robin, Carmack & Gonia and Joan B. Carmack for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Law Offices of Armand J. Pasano; and Ricardo Diaz for Respondent Craig Main.

---

**OPINION**

**HOLLENHORST, J.**—Petitioners, G.E. Engine Maintenance and Electric Insurance (collectively G.E.), as the affected employer and its insurance carrier, respectively, seek review and annulment of an order of the Workers'

Compensation Appeals Board finding compensable injuries sustained by applicant Craig Main as a result of a traffic collision that occurred on his way to work. They contend that substantial evidence does not support the finding that the "special risk" exception to the "going and coming" rule applied in this case. We agree, and, accordingly, we annul the order.

FACTS

Main was injured in a traffic accident on his way to his place of employment, G.E. Engine Maintenance. The plant is located on Avion Street at Ontario Airport. Avion Street is owned and maintained by the City of Los Angeles Department of Airports.

The accident occurred about 3:20 p.m. about .23 miles from the G.E. test cell facility where Main was employed. Main's shift was to begin at 3:30 p.m.

Main was riding his motorcycle following a Ford Econoline van. The van made a right turn, colliding with Main and throwing him off his motorcycle. According to G.E.'s version,[1] the accident occurred because Main tried to pass the van on the right. The van had its right turn indicator on.

According to Main's version, the van moved to its left as if to make a left turn. He started to pass the van on the right, and it then swerved back to the right and made a right-hand turn instead. The van's right front bumper collided with Main's motorcycle.

A civil traffic engineer testified for G.E. He stated that the area is an industrial area. There are 12 facilities along Avion Street, including a police/fire building, Raytheon hangar, storage yard for air police vehicles, and two G.E. buildings: the main building and the test cell facility. Two of the facilities, the radio tower and the air police, do not generate traffic. Avion is not restricted, i.e., members of the public can drive on it and quite frequently people get lost on it. There are no fast-food or retail establishments on Avion. In other words, there is nothing there that would attract the general public. The public airport terminal is on the other side of the airport about one mile away "as the crow flies." The expert did not monitor the traffic and could not testify as to the traffic per day.

The workers' compensation referee (WCR) found that Main's injury did arise out of and occur in the course of employment, concluding that the

---

[1]G.E. indicates that it is basing its version of the facts on the police report which was admitted into evidence.

special risk exception to the going and coming rule applied in this case. The WCR concluded that Avion is a de facto private industrial zone and that in order to get to work, an employee such as Main had to pass through a "zone of danger" or "field of risk." "The industries and services on Avion Street would generate a great deal of delivery vehicle, delivery van, and delivery truck traffic, much more than on a "normal" street. . . . It is common knowledge that these types of businesses would attract a great deal of delivery-related vehicular traffic." Thus, "this travel through Avion Street would be in conjunction with increased traffic of trucks, vans, and other delivery vehicles. Applicant, Mr. Main, did not have a 'routine' commute because he had to pass through an airport service and industrial area in order to get to work at General Electric Engine. The delivery vehicles—(trucks and vans)—are dangerous vehicles which increase the risk to employees who are traveling through the airport service and industrial area—(Avion Street)—to get to work. These airport service-related businesses and the traffic related to them—(of an industrial nature)—increase the risk because of the nature of the businesses in the area of Avion Street. (These trucks and vans create a 'zone of danger' to which the general public would not be exposed.) [¶]This delivery-related vehicular traffic, such as delivery vans and trucks, creates a 'zone of danger/'field of risk' through which applicant had to pass to go to and from work at [G.E.] Engine and [G.E.] test cell. This is a distinctive risk which is quantitatively [sic] greater than the risk to the general public. This is the exact risk that caused applicant his injury. . . . [¶] Delivery vehicles do not provide their drivers with good visibility, they are large, and must pull out far in order to execute turns. Thus, they pose a special risk of injury to employees driving on Avion Street, which is a zone of danger, in the form of possessing greater than normal delivery-related vehicular traffic [in] an industrial area."

## DISCUSSION

■ An injury occurring on the way to or from work is not generally covered under the workers' compensation system. *Hinojosa* v. *Workmen's Comp. Appeals Bd.* (1972) 8 Cal.3d 150, 157 [104 Cal.Rptr. 456, 501 P.2d 1176] stated the rule as follows: "[T]he courts have held non-compensable the injury that occurs during a local commute èn route to a fixed place of business at fixed hours in the absence of special or extraordinary circumstances."

One exception to the going and coming rule is the special risk exception. Generally stated, "[i]f a condition on or off the employer's premises creates a special risk of harm to an employee about to enter or who has just

left the premises, the injury is within the course of employment." (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (2d ed. rev. 1998) § 4.156[1], p. 4-186.)

"[T]he fact that an accident happens upon a public road and the danger is one to which the general public is likewise exposed, does not preclude the existence of a causal relationship between the accident and the employment if the danger is one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree." (*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1946) 28 Cal.2d 329, 338 [170 P.2d 18].)

Our Supreme Court in *General Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 595 [128 Cal.Rptr. 417, 546 P.2d 1361] (*Chairez*), applied a two-pronged test to determine applicability of the special risk exception. *Chairez* held that the exception will apply (1) if "but for" the employment the employee would not have been at the location where the injury occurred and (2) if "the risk is distinctive in nature or quantitatively greater than risks common to the public." (*Chairez, supra,* 16 Cal.3d at p. 601.)

In *Chairez,* an employee parked his car in front of his place of employment, got out of the car, and was struck by a passing motorist. The court concluded the employee's injury was causally related to his employment. "But for his job, Chairez would not have been on La Cienega that morning. However, Chairez' death does not come within the second requirement of the special risk exception—that the risk is distinctive in nature or quantitatively greater than risks common to the public. Chairez was parked on a public street at a time and in a location where parking is available to the general public. The fact that he was struck by a passing motorist, while tragic, is a type of risk the public is subject to daily. Moreover, nothing in the facts indicates the employee was exposed to a greater risk from passing motorists than was anyone else on La Cienega that morning." (16 Cal.3d at p. 601.)

In contrast, the special risk exception has been held applicable in cases where an employee is injured while making a left turn onto the employer's premises from a public street in front of oncoming traffic. This, according to the cases, exposes the employee to a special risk distinctive in nature and not shared by the public generally because the general public does not make the left turn on a daily basis. (*Greydanus* v. *Industrial Acc. Com.* (1965) 63 Cal.2d 490, 492-493 [47 Cal.Rptr. 384, 407 P.2d 296]; *Pacific Indem. Co.* v. *Industrial Acc. Com., supra,* 28 Cal.2d 329, 338.)

Here, the evidence presented at the trial does not establish that traveling on Avion Street exposed Main to a hazard not shared by the motoring public at large. The WCR's finding that the traffic on Avion Street was primarily industrial trucks and vans is not supported by any evidence. G.E.'s expert testified he did not conduct a traffic survey, and there was no other evidence presented as to the amount and kind of traffic on this street. It was mere speculation by the WCR that the type of vehicles Main would likely encounter at 3:20 in the afternoon would differ from that on any other street. Also unsupported by the evidence is the WCR's conclusion that delivery trucks and vans pose a danger because they do not provide good visibility and are large and pull out far in order to make a turn. Although this may be true of some large trucks and vans, there was no evidence that it was true of the Ford Econoline van in this case. There was no evidence regarding this van, its size, how it was equipped, or the location of the mirrors. We note that even though the Ford Econoline van involved in this incident was, in fact, owned by a business, many such vans and similar vehicles are owned by private individuals. Vans are a common sight on the nation's streets and highways. Assuming arguendo that vans pose a special danger to other vehicles, anyone travelling on any road would be subject to the same risk.

In conclusion, substantial evidence does not support the finding that Main was subject to a "risk is distinctive in nature or quantitatively greater than risks common to the public." (*Chairez*, *supra*, 16 Cal.3d at pp. 600-601.) The special risk exception to the going and coming rule does not apply to this case. Accordingly, the order denying G.E.'s petition for reconsideration is annulled.

Ramirez, P. J., and McKinster, J., concurred.