Alvin **BLADES**, Respondent,

v.

**COMMERCIAL TRANSPORT, INC.,**
and Great West Casualty Co.,
Appellants.

No. SC 82338.

Supreme Court of Missouri,
En Banc.

Nov. 14, 2000.

Bill W. Richerson, Kansas City, for Appellants.

Lawrence H. Rost, New Madrid, for Respondent.

JOHN C. HOLSTEIN, Judge.

Appellants Commercial Transport, Inc., and Great West Casualty Company appeal from a decision of the Labor and Industrial Relations Commission (Commission) affirming a temporary or partial award given by an Administrative Law Judge (ALJ) to respondent Alvin Blades. This Court granted transfer of the case after opinion by the court of appeals. *Rule 83.04.* The sole issue for resolution is whether Blades' injury arose out of and in the course of his employment. The Court concludes that the injury did not arise out of employment. The decision of the Commission is reversed.

The facts are not in dispute. Alvin Blades, a truck driver for Commercial Transport, injured his shoulder when he slipped on icy steps leading to the Teamster's Union Hall in Cape Girardeau. The hall is neither owned nor occupied by Commercial Transport. At the time of the accident, Blades was en route to testify on behalf of his union in an arbitration hearing regarding a dispute with Commercial Transport over additional compensation for dropping off and hooking up trailers. The employee who filed the underlying grievance and a local union representative asked Blades to testify. He received no pay for his testimony. Neither is he a union officer nor was his appearance anticipated by Commercial Transport. Following his testimony, Blades sought medical attention from a local hospital where he was informed his rotator cuff was torn. Soon thereafter, he filed a worker's compensation claim.

The applicable standard of review is found in sec. 287.495.1.[1] Commercial Transport's claim is that there is insufficient competent evidence in the record to support the award.

■ Worker's compensation benefits are available for personal injuries arising out of and in the course of employment. *Sec. 287.120.1.* Injuries sustained by workers are not covered unless they are engaged in or about the premises where their duties are being performed, or their services require their presence as a part of such service. *Sec. 287.020.5.* Since the determination of the compensability of the injury is a matter of law, the Court reviews the Commission's conclusion *de*

1. All statutory references are to RSMo 1994.

*novo. Cox v. Tyson Foods, Inc.,* 920 S.W.2d 534, 535 (Mo. banc 1996).

In making its award, the Commission relied on the mutual benefit doctrine. That doctrine, closely related to the dual purpose of travel doctrine, holds that "[a]n injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable." *Wamhoff v. Wagner Elec. Corp.,* 354 Mo. 711, 718, 190 S.W.2d 915, 919 (Mo. banc 1945). But not every act of an employee that may result in a remote, attenuated or speculative benefit to the employer is compensable under the doctrine. An injury incurred while travelling to or from work is not usually compensable, even though the employer arguably benefits from the act of travel to or from work. *Cox,* 920 S.W.2d at 535. Employee injuries incurred during an unpaid lunch hour off the employer's premises while eating, shopping, exercising or walking are not generally compensable, even though the employer may benefit from having a "healthier, happier" workforce from those acts. *Wilson v. Monsanto Co.,* 926 S.W.2d 48, 50 (Mo.App.1996). The applicability of the doctrine turns on the facts of each case.

The case of *McQuerrey v. Smith St. John Mfg. Co.,* 240 Mo.App. 720, 216 S.W.2d 534 (1948), is instructive. In that case, a carpenter's union entered into an apprenticeship agreement with an employer whereby the employer was obligated to provide training opportunities for union members in order to hone their skills. *Id.* at 535. The agreement provided the time spent in such training would not be considered compensable work, and the carpenter was entitled to no pay for the time spent training. In addition, the employer supplied no tools for the instruction, and classes were held outside normal business hours, in the evenings, at a local vocational-technical school. In concluding the injury noncompensable, the court noted that the employer did not force an employee to enroll in or attend classes, that the location

and tools were not supplied by the employer, and the employer was unable to supervise or control the employees' conduct in class or guide the classroom instruction. The court added:

> It would be an intolerable situation to hold an employer liable for accidental injuries when he had no *right* to supervise and control the conditions and circumstances under which the employee was working at the time of his injury. It is true our courts have gone far in holding an employer liable for accidental injuries to an employee when not on the premises of the employer. But the underlying theory of those cases is that the employee is about his employer's business, or is on his way to or returning from a place where his employment required him to be.

*Id.* at 537 (emphasis in original).

As with *McQuerrey,* Blades was not required to be at the hearing by his employer. He was not paid for appearing. His purpose for the trip was to offer testimony adverse to his employer's interests. The accidental injury did not happen while Blades was giving testimony or as a result of his testimony. The accident did not happen during his regularly scheduled working hours. The injury occurred on property neither owned nor controlled by Commercial Transport, and the company had no way of ensuring the steps leading to the union hall were safe and cleared of ice. The accrual of any benefit to Commercial Transport from Blades' presence on the slippery steps of the union hall was too attenuated and remote to invoke the mutual benefit doctrine.

At no point does Blades address *McQuerrey* or attempt to distinguish it. Instead, he refers the Court to *Scullin Steel Co. v. Whiteside,* 682 S.W.2d 1 (Mo. App.1984). Blades' reliance on *Scullin Steel* is misplaced. The claimant there was a union shop steward employed by Scullin Steel Company. He relayed a foreman's criticism of a co-employee's

threat to file a grievance to the co-employee. The claimant and the co-employee then became embroiled in an argument, resulting in claimant having to be restrained by other workers. Later that day, claimant was served with notice from the employer that as a result of his conduct, he was suspended. To contest the suspension, he was instructed that he must attend a hearing the next day at the workplace. The next morning, claimant arrived early for the hearing. When he was a few feet from the company front door, he was accosted by the co-employee and her boyfriend, another Scullin Steel employee. In the course of the altercation that followed, the boyfriend shot claimant three times. The court held the injuries were compensable, relying, among other grounds, on the mutual benefit doctrine. *Id.* at 3.

In *Scullin Steel*, the act of mutual benefit was not claimant's arrival at the plant for the purpose of attending the grievance hearing. The act of mutual benefit was the claimant's act as a union steward in communicating the foreman's negative comments to the co-employee. The assault stemmed from performing that act as a part of the claimant's union duties. After first noting that off-premises assaults arising from workplace friction have been found compensable, the court went on to explain the reasoning for not foreclosing liability:

> Hazards of employment may spill over boundary lines and extend the zone of employment danger.... Injuries sustained by an employee while going to or from work can be compensable "where the off-premises point is on the only route or the normal route that [the employee] must take to get to their employment and there exists a special hazard, one to which the employee is exposed by reason of the employment, to which the general public is not subjected."

*Id.* at 2 (citations omitted).

Unlike the claimant in *Scullin Steel*, the claimant here was not subject to any "special hazard" associated with work, such as an assault by a co-employee that began on employer premises and spilled over to another location. The injury did not occur while Blades was on or approaching his employer's premises. Also, the employer here had not invited or encouraged Blades to attend the hearing, as was the case in *Scullin Steel*. That case is inapposite.

Blades refers the Court to *D'Alessio v. State*, 509 A.2d 986 (R.I.1986); *New England Tel. Co. v. Ames*, 124 N.H. 661, 474 A.2d 571 (1984); *Mikkelsen v. N.L. Indus.*, 72 N.J. 209, 370 A.2d 5 (1977); and *Perez v. Worker's Comp. Appeals Bd.*, 152 Cal. App.3d 60, 199 Cal.Rptr. 280 (1984), to demonstrate his injury is compensable under the worker's compensation statutes.

In *D'Alessio*, the injured employee, a union officer, had the employer's permission to be on the employer's premises in a room specifically provided for a union meeting. *D'Alessio*, 509 A.2d at 988. In *Ames*, a union bargaining representative and employee injured herself on the leg of a table during negotiations for a new contract. *Ames*, 474 A.2d at 572. The court noted that the negotiations and execution of a labor contract are for the mutual benefit to the employee and employer alike in preventing industrial strife and unrest. *Id.* at 574. In both *Perez* and *Mikkelsen*, the courts found that an employee injury incurred while traveling to or from a union meeting called to vote on ratification of employer's proposed contract was compensable. *Mikkelsen*, 370 A.2d at 6; *Perez*, 199 Cal.Rptr. at 283. Noteworthy in *Mikkelsen* was that the court distinguished a case where it appeared the union meeting was called to declare a strike rather than ratify a contract. *Id.* at 9.

Without approving of the holding of any of these cases, they are each factually distinguishable from the case at hand. In each instance, the employer knew or had reason to know of the employee's presence at the place of the injury and had by words or conduct encouraged the claimant to perform an act from which the employer

would gain some benefit. In addition, cases may be cited from other jurisdictions holding injuries incurred while participating in a union activity off the employer's premises are not compensable. *Alaska Pulp Corp. v. United Paperworkers Int'l Union*, 791 P.2d 1008 (Alaska 1990); *Doyle v. Mayfield*, 48 Ohio App.3d 113, 548 N.E.2d 326 (1988); *Tegels v. Kaiser–Frazer Corp.*, 329 Mich. 84, 44 N.W.2d 880 (1950); *Cimato v. John W. McGrath Corp.*, 45 A.D.2d 797, 357 N.Y.S.2d 166 (1974).

 Finally, claimant notes the general public policy favoring timely and fair resolution of labor disputes. Unquestionably, that is the policy of Missouri. However, when an employee's injury occurs off the employer's premises, when the employee is not exposed to any special hazard associated with employment, where the employer has not by words or conduct encouraged the employee's act and has no knowledge of the employee's act, and where the benefit to the employer is speculative, remote and attenuated, the mutual benefit doctrine is inapplicable. That the injury occurred while the employee was walking to a labor hearing does not, by itself, make the injury compensable under the doctrine.

Each case turns on its own facts under the mutual benefits doctrine. The test is not whether any conceivable benefit to the employer can be articulated no matter how strained, but whether the act that resulted in the injury is of some substantive benefit to the employer. That is not to say the benefit needs to be tangible or great. *Bybee v. Ozark Airlines*, 706 S.W.2d 570, 572 (Mo.App.1986). But the benefit cannot be so remote that it deprives the mutual benefit doctrine of meaning. Under the facts of this case, Blades' injury while walking up the steps of the union hall did not arise out of and in the course of his employment as a truck driver. The decision of the Labor and Industrial Relations Commission is reversed.

All concur.