Sarah **PANZAU**, Appellant,

v.

**JDLB, INC., Respondent.**

No. ED 85615.

Missouri Court of Appeals, Eastern District, Division Three.

Aug. 9, 2005.

Daniel R. Schramm, Chesterfield, MO, for respondent.

Paul F. Keeven, Chesterfield, MO, for appellant.

## *OPINION*

GLENN A. NORTON, Judge.

Sarah Panzau appeals the Labor and Industrial Relations Commission's decision that her injuries did not arise out of or in the course of her employment. We affirm.

## I. BACKGROUND

Panzau was seriously injured in a one-vehicle accident just before 4:30 a.m. on a Saturday. Blood taken from her at the hospital shortly after the accident showed that her blood alcohol level was .306 milligrams per deciliter. The parties have stipulated that her alcohol intoxication was a substantial factor in causing the accident. Panzau was employed by JDLB, Inc., doing business as DB's Sports Bar, as a waitress, hostess and bartender. On the day before the accident, Panzau worked from 10:00 a.m. to 3:00 p.m. After clocking out, she left DB's and met up with friends at a different bar at 6:00 p.m. Panzau had two alcoholic drinks, and then she and her friends took a shuttle bus to the Cardinals baseball game. She had another drink on the bus and beer at the game.

Panzau and her friends left the game early and went to DB's, arriving around 10:00 p.m. An employee testified that Panzau was stumbling and yelling and appeared drunk. Panzau and her friends sat down to eat, and a beer was ordered for Panzau. One of DB's owners told Panzau that she was drunk and would not be served alcohol; he told the staff not to serve her alcohol. After Panzau and her friends finished eating, they left DB's and went to another bar in the area. Panzau testified that she has memory blackouts from the evening, particularly from this time on. There was other testimony, however, that Panzau consumed two or three beers and two or three shots of alcohol at the other bar. They stayed there for approximately ninety minutes.

Panzau returned to DB's around 1:30 a.m. A few witnesses testified that she looked more sober at this time than she had earlier. Panzau sat with two of the owners and a group of the owners' friends,

all of whom were at DB's socially. Neither of the owners was working at that point. They did not encourage Panzau to sit with them; in fact, both were concerned that she may embarrass herself and them and felt that she imposed on their group. According to witnesses, Panzau drank only water while at the owners' table. At one point, one of the owners ordered drinks for his friends, but not for Panzau, and Panzau voluntarily carried the tray of drinks from the bar to the table. Panzau did not receive—nor did she expect—any compensation for that act. DB's customers commonly carried their orders from the bar to their tables if the staff was busy. In the course of the evening, Panzau persuaded one of the owners to consume a shot of alcohol from her belly. Panzau did not drink any alcohol herself during this activity.

The owners and their group left DB's at 2:45 a.m., 15 minutes before closing time. Panzau also left, as one of the owners had instructed, but returned while the staff was closing the bar. During the closing procedures, Panzau poured shots and took them to the office for herself, a manager and another employee who was counting the day's till. Panzau drank one shot. She left before the other employees were finished closing and was involved in the accident approximately ten miles from DB's.

Panzau filed a claim for workers' compensation, arguing that she became intoxicated in the course and scope of her employment at DB's and that her injuries resulted from the intoxication. The Administrative Law Judge found that the accident did not arise out of or in the course of her employment and denied her claim. *See* section 287.120.1 RSMo 2000.[1] The Commission adopted the ALJ's decision, and Panzau appeals.

## II. DISCUSSION

■ We review the decision of the ALJ as adopted by the Commission. *Reidelberger v. Hussman Refrigerator Co.*, 135 S.W.3d 431, 433 n. 2 (Mo.App. E.D. 2004). The Missouri constitution, article V, section 18 provides that judicial review of the Commission's award is to determine whether the award is supported by competent and substantial evidence upon the whole record. *See Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). "This standard would not be met in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* at 223. By statute, we "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

Section 287.495.1. The Commission's interpretations of law are reviewed for correctness without deference to the Commission's judgment. *Ming v. General Motors Corp.*, 130 S.W.3d 665, 667 (Mo.App. E.D. 2004). We review these decisions independently, and, if we disagree with the Commission, then we may reverse because of the error of law. *Id.* at 667.

■ The only issue on appeal is whether the Commission erred in finding that Panzau's injuries did not arise out of and in the course of her employment. This is a question of law. *Blades v. Commercial Transport, Inc.*, 30 S.W.3d 827, 828 (Mo.

---

1. All statutory references are to RSMo 2000.

banc 2000). Panzau argues that the mutual benefit doctrine and special hazard doctrine apply in this case and establish that, even though she was off-duty at the time, her accident arose out of and in the course of her employment. We disagree.

## A. Mutual Benefit Doctrine

An injury that occurs during an activity mutually beneficial to the employer and the employee arises out of and in the course of employment. *Scullin Steel Co. v. Whiteside*, 682 S.W.2d 1, 2 (Mo.App. E.D.1984). "[A]n injury suffered by an employee while performing an act for the mutual benefit of the employer and the employee is usually compensable." *Blades*, 30 S.W.3d at 829. The applicability of the doctrine turns on the facts of each case, and not all injuries arising from acts that have only remote or attenuated benefits to the employer are compensable. *Id.* Panzau alleges that by serving drinks and drinking alcohol at DB's on the night of the accident, she provided a benefit to her employer and that her injuries arose out of and in the course of those mutually beneficial activities.

The Commission found that Panzau voluntarily retrieved one tray of drinks and that she served one tray of shots to other employees during closing and concluded that neither act was beneficial to the employer. Contrary to Panzau's argument, these findings are supported by sufficient competent and substantial evidence and the conclusion of law is correct.

Panzau points to the testimony of one employee who stated that Panzau helped by carrying trays to "tables" as overwhelming evidence contradicting the Commission's findings. We do not reweigh the evidence; the Commission judges the weight to be given to conflicting evidence and the credibility of witnesses. *DeLong v. Hampton Envelope Co.*, 149 S.W.3d 549, 554 (Mo.App. E.D.2004). Moreover, this single reference to more than one table does not outweigh testimony by Panzau and both owners that Panzau had voluntarily carried only one tray of drinks to her own table as any other customer might have done. Although the employer's written policy provided that off-duty employees are expected to perform employment activities if requested to do so by a customer, voluntarily retrieving a tray of drinks for the group with whom she was socializing was not an employment activity. In fact, customers commonly retrieved their own drinks from the bar, Panzau did not expect compensation for this act and she admitted that she was at DB's socially and not as an employee. The benefit to the employer by this act, if any, was remote, and even if the injuries arose out of and in the course of this act, it was not compensable. Additionally, drinking by employees during or after closing was forbidden, and employees had been fired for the practice. No benefit was provided to the employer by serving drinks to the closing employees.

The Commission also found that Panzau consumed one beer and one shot at DB's over the course of the night. This finding was also supported by competent and substantial evidence. Other than testimony that a beer was ordered for her and that she consumed a shot during closing procedures, the evidence showed that Panzau drank only water at DB's that night. Panzau argues that because of her high level of intoxication at 4:30 a.m., "commonly understood alcohol elimination factors" and testimony that she appeared more sober when she returned to DB's at 1:30 a.m. than she had when she had been there earlier in the evening support an inference that she drank heavily from 1:30 to 4:30 a.m. while at DB's. We decline to draw that inference based on allegedly common understanding and in light of evidence that Panzau consumed four to six drinks at the bar she was at before returning to DB's

the second time. Nor is Panzau's own testimony that she consumed shots of hard liquor with the owners overwhelming evidence contradicting the Commission's findings because that testimony was cast in doubt by her self-professed blackouts during that time period. *See Wester v. Missouri Department of Labor & Industrial Relations,* 134 S.W.3d 757, 761 (Mo.App. S.D.2004) (the Commission has the right to believe or disbelieve none, all, or part of any witness's testimony).

In any case, any alcohol consumption by Panzau at DB's served no benefit to the employer. Panzau's claim that the workplace environment encouraged drinking on and off duty is belied by the record. The employer had a general policy against consuming alcohol on the job, and competent and substantial evidence shows that this policy was enforced in all but the rare instance that an owner or manager gave permission. Permission was not given to Panzau that night; in fact, one of the owners discouraged her from drinking at DB's by refusing to serve her alcohol. Panzau has made no plausible argument that the employer benefited by her drinking activities at DB's.

The mutual benefit doctrine does not apply in this case.

## B. Special Hazard Doctrine

 The special hazard doctrine applies when an employee is exposed to a peculiar or abnormal peril whose risk is incident to or inseparable from the scene of employment. *Snowbarger v. Tri–County Electric Coop.,* 793 S.W.2d 348, 350 (Mo. banc 1990). The doctrine can be used to circumvent the general rule that injuries occurring during travel to or from work are not compensable. *Id.* at 349. In *Snowbarger,* for instance, a utilities employee was required to perform physical work for his employer during 86 hours of a 100.5 hour emergency shift. *Id.* On his way

home after the shift, fatigue caused the employee to fall asleep at the wheel of his vehicle, and he was killed in an accident. *Id.* The Court reasoned that because the employee's extremely long work hours exposed him to an abnormal risk and because the work was required by his employer, the accident was compensable. *Id.* at 350. Panzau argues that drinking was a special hazard incident to and inseparable from her employment.

The risks Panzau took in drinking excessively and driving under the influence of alcohol were entirely separable from her work. Again, the evidence showed that she drank, at most, one beer and one shot at DB's that night. All other alcohol was consumed elsewhere. But more importantly, Panzau presented absolutely no evidence or plausible argument that her drinking that night was required or encouraged by her employer. Rather, the decisions to drink excessively and then drive home were independently made by Panzau alone. *See Hilton v. Pizza Hut,* 892 S.W.2d 625 (Mo.App. W.D.1994) *overruled on other grounds by Hampton, supra* (special hazard doctrine did not apply where employee, after regular shift, made independent decision to drive while drowsy).

The special hazard doctrine does not apply to this case.

The Commission's decision is supported by sufficient competent and substantial evidence on the whole record, and there are no errors of law.

## III. CONCLUSION

The Commission's decision is affirmed.

CLIFFORD H. AHRENS, P.J., and NANNETTE A. BAKER, J., concurring.